B. F. MOORE v. JOHN R. DUNN, Adm'r, et als.

*Annuity—Exoneration—When proceeds of personal property to be used by an administrator to discharge mortgage.*

1. A mortgage given to secure an annuity provided that in case the annuity was not promptly paid, the annuitant might sell the mortgaged land, and after paying the overdue instalments, might either re-invest the money or might estimate the cash value of her annuity at the day of sale, and retain the amount out of the proceeds. The annuity was in arrears, and a suit was brought by a second mortgagee to foreclose. The annuitant elected to take the cash value of her annuity, but died pending the action to foreclose; *Held*, that her administrator was only entitled to the unpaid arrears of the annuity and interest thereon.

2. The rule that the personal estate must be used in discharging debts secured upon real estate, in order to its exoneration, operates among persons who derive their interest directly from the deceased owner, and does not extend to creditors, secured by a mortgage. These must first exhaust the appropriated land, and look to the personalty only for the residue.

(*Creecy* v. *Pearce*, 69 N. C., 67, cited and approved).

This was a civil action heard before *Gudger, Judge,* at August Term, 1884, of WAKE Superior Court, upon exceptions to the report of a referee.

The facts appear in the opinion.

His Honor overruled the exceptions of the defendants, and they appealed.

*Messrs. Pace & Holding,* for the plaintiff.
*Messrs. D. G. Fowle, Fuller & Snow, E. C. Smith,* and *Strong & Smedes,* for the defendants.

SMITH, C. J. On the 26th day of September, A. D. 1873, Elizabeth Carver, the surviving widow of Job Carver, and as such, entitled to an estate for life in one-third of the lands descended from the intestate to Miles E. Carver their son and his heir-at-law, conveyed her interest as tenant in dower, to the latter in consideration of his covenant expressed in the deed

executed by both, to pay her during life an annuity of $400; whereof one moiety was payable on the first day of October following, and thereafter equal parts of the whole on the first day of April and October of each year.

At the same time and immediately thereafter, the said Miles E. Carver alone, his wife Octavia J., not joining in the deed, reconveyed a full estate in one of the tracts mentioned in his mother's deed to him, to secure the performance of his contract in regard to the annuity, with a condition that upon a default in payment continuing for twenty days, the mortgagee might sell the premises and, after discharging the overdue instalments, invest the remaining proceeds of sale in such manner as she may deem best, for securing the payment of said annuity, or to require of the purchaser with his consent, that he give adequate security for such future sums as might thereafter become due; or the said Elizabeth might, at her option, estimate the cash value of the said annuity, at the time of sale, according to the rules of law, and pay said amount out of the cash proceeds of sale in addition to such instalments as were then due. The mortgage was admitted to registration on the 11th day of December, 1873.

On December 1st, 1874, Miles E. Carver obtained a loan from B. F. Moore in the sum of $2,500; and executed his note therefor with John R. Dunn and Peterson Dunn, as sureties, payable at six months with interest at eight per cent. payable semi-annually, with like interest on each semi-annual payment, not provided for. To secure this indebtedness the said Miles E. Carver and wife, by deed of mortgage executed at the same time, conveyed to said B. F. Moore two tracts of land therein particularly described, with a power of sale in case of the failure of the mortgagor to meet the note at maturity and a right to apply the moneys thence derived to its satisfaction.

M. E. Carver died intestate in August, 1877, and letters of administration on his estate issued to the said John R. Dunn, a surety to the note.

On the 21st day of December, 1877, the said B. F. Moore commenced this action against the said John R. Dunn individually and as administrator of said M. E. Carver, deceased, Octavia J. Carver his widow, Elizabeth Carver and Pearl Carver their two infant children, who are defended by their guardian *ad litem* Willie D. Jones, and Peterson Dunn the other surety to the note, to reduce the same to judgment for the balance due, and for a foreclosure and sale of the premises in order to its discharge.

Answers were put in by the said Octavia, in which she sets up a claim to dower and insists that the personal estate of her intestate husband be appropriated to the payment of the mortgage debt and the land exonerated therefrom; by the infants insisting on the exoneration; and by Elizabeth P. Carver, who relies upon the priority of her lien on the land conveyed to secure her annuity, and in the event of an ascertained deficiency of personal assets in the hands of the administrator J. R. Dunn, consents to a sale, and demands a payment of her over-due instalments and also of the "cash value of the said annuity to be ascertained by law."

The defendant Peterson Dunn died, pending the suit, and his administrators D. D. Gill and J. J. Dunn have been made parties in his stead.

The personal estate of M. E. Carver is insufficient to pay the debts and costs of administering it.

At August term, 1879, it was "ordered with consent of all parties, that all the issues of law and fact involved in this action, be referred for determination to Alfred W. Haywood, Esq., under the provision of the Code of Civil Procedure." Under a decree of sale made during the reference, the commissioner appointed for the purpose sold said lands on October 14th, 1882, and made report thereof to the court, from which it appears that the tract securing the annuity was bid off for $2,300.

Elizabeth P. Carver, the annuitant, died on the 21st day of February following, before the referee had completed the refer-

ence and made his report, and her administrator W. B. Smith was admitted to defend in her place.

To the referee's findings and rulings only two exceptions are taken and these, not sustained by the court, are alone presented in the record for review by us.

The referee ruled that the annuity was to be paid up to the annuitant's death, with interest on the successive instalments from the time when each became due, the value being definitely ascertained by her death; while the appellants, W. B. Smith and the infant defendants insist upon a valuation fixed at the day of sale upon an estimate of the probable duration of life and irrespective of its termination soon after. The referee finds her expectation of life to be ten years from October 1st, 1882, the present value of which would be $3,096.19.

He reports as due on the successive unpaid instalments from October 1st, 1875, up to the death of the annuitant on February 21st, 1883, $2,985.30, and this sum reduced by appropriating to it the $2,300 arising from the sale of the land to $636.64, he rules to be entitled to share *pro rata* with other creditors in the distribution of the personal estate of the debtor.

The appellants' exception to this ruling is that the value of the homestead fixed at $1,000 should be first deducted from the sum received upon the sale of the land and the balance alone used in reducing the debt to $1,685.30, which should participate in the division of the fund.

The validity of these exceptions, and no others, we are called upon to consider in the voluminous record brought up by the appeal.

(1). The claim to the value of the annuity upon the basis of the probable duration of the annuitant's life at the time of the sale. We do not put the suggested construction upon the clause in the mortgage deed, that, in case of the conversion of the land into money by sale, it contemplates an estimate of the annuity as a future fruit-producing fund, when there is a certain and definite method of arriving at its value. The other was intended to be

resorted to from the necessity of the case, when the annuitant was living, and it was a substitute for the semi-annual payments of indefinite continuance.    This is manifest from the provision, that in place of setting apart a sufficient portion of the purchase money, the purchaser and annuitant might arrange for an adequate security, for the subsequent instalments.    But when the right to these ceased before any appointment or appropriation of the fund was made, and its duration was determined by death, the claim to an exhausted annuity terminated also and was confined to such instalments as then remained unpaid.

Such was the condition of the fund when the annuity expired, and it would be an extraordinary proceeding to recur to a period when the annuitant was living and ascertain the sum she should receive upon the basis of the probable duration of her life, in the presence of the fact that it came to a close four months afterwards.    The referee committed no error in his ruling and properly restricted the claim.

(2). The sum that is entitled to share in the apportionment of the insufficient personal estate among creditors.

There is no objection made by the appellants to the appropriation of $1,000 as the value of the homestead exemption, from the purchase money, and it is clear that the residue of it must be taken from the entire debt due the deceased mortgagee, before the latter can come in for participation in the funds to be administered.    The rule that the personal estate must be used in discharging debts secured upon real estate in order to its exoneration, operates among persons who derive their interest directly from the deceased owner, when he has made no inconsistent disposition of his property.    It does not extend to creditors who have a lien upon real estate, as is expressly decided in *Creecy* v. *Pearce*, 69 N. C., 67.    These must first exhaust the appropriated land and look to the personalty for what remains when there is a deficiency of assets to pay all.    This principle is announced by Lord Chancellor Hardwick in *Bartholomew* v. *May*, 1 Atk., 487, and seems to have been since recognized.    2 Williams, Ex., 1042.

The widow is, however, entitled to have the personal assets in relief of her dower. *Creecy* v. *Pearce, supra.*

We, therefore, sustain the last exception and reverse the ruling in reference thereto, and affirm the judgment upon the first exception. The costs will be paid out of the sales of the land.

Let this be certified.                                    Reversed.