ADAMS, J., took no part in the decision of this case.
The plaintiffs instituted an action against the widow and creditors of T. C. Leak, deceased, for the purpose of securing an order to sell property to create assets and to settle the estate. After the cause had been committed to a referee, the Title Guaranty and Insurance Company and the Louisville Title Company filed a petition before the referee. The referee made an order that the "Title Guaranty and Insurance Company and the Louisville Title Company be, and they are hereby allowed to become parties to this action and to file their said petitions as their complaint herein. It is further ordered that said parties are allowed to come into this action because the referee finds that it is necessary that the contentions of the said parties be heard and determined in this action in order to adjudge completely and to settle the matters set out in the complaint herein filed, but the said parties shall come into this action and their allegations, together with all answers or replies thereto, shall be heard and determined without affecting or delaying the matters heretofore heard, including the accounts provided for in the order of reference, which has already been heard, and the referee will file his report as to all matters heretofore heard and a *Page 94 
judgment shall be entered thereon either with or without exceptions, as the case may be, separate and apart from and unaffected by the hearing and determination of the issues and questions presented by the said complaint of said movants and the answers and replies thereto."
The North Carolina Joint Stock Land Bank also asked to be made a party, and said petitioner was allowed to intervene by an order of the referee, which said order declares that such intervention "shall not have the effect of interfering with the matters heretofore heard, and the referee will proceed to file the report as to all such matters . . . in all respects as if this order had not been entered," etc. The referee, after finding certain facts with reference to the death of T. C. Leak, leaving a last will and testament and the appointment of Parsons, Leak and Everett, as trustees and executors, proceeded to find other facts pertinent to the controversy. These facts may be substantially stated as follows: On 14 September, 1920, T. C. Leak purchased from S. S. Steele a one-half undivided interest in certain lands. He gave three notes for $8,500 each, payable on 1 January, 1921, 1922, and 1923. Mary L. Leak, his wife, signed the notes with her husband and in order to secure the payment of all said notes, T. C. Leak and his wife, Mary L. Leak, executed a mortgage to S. S. Steele, which mortgage was duly recorded. During his lifetime T. C. Leak paid off the first two notes and paid the interest on the third note of $8,500 to 1 January, 1923. Leak died on 4 December, 1923, and thereafter his executors and trustees paid the interest on said note to 1 January, 1926, and on said date paid $2,000 on principal, leaving a balance of $6,500 due. Interest was also paid on the balance to 1 January, 1929. In the fall of 1925, the executors and trustees needed $50,000 to pay off certain debts and to carry on the business enterprises of the estate. They applied to the North Carolina Joint Stock Land Bank for a loan of $50,000, and were informed by said Land Bank that a loan could not be made to executors and trustees, and suggested that said executors and trustees convey the land to some individual, and that such person could thereupon apply for the loan and secure the same and reconvey the land to the executors and trustees subject to the encumbrance. Thereafter in December, 1925, a special proceeding was instituted in Rockingham County authorizing the executors and trustees to convey the land or mortgage the same, and thereupon the land was conveyed by the executors and trustees to Mary L. Leak, widow of the deceased. She signed an application to the Land Bank for a loan of $50,000 upon the property, representing in substance that there were no liens upon the property and that she was the sole owner thereof. The Land Bank approved the application and employed an attorney at Rockingham, N.C. to examine the title to the property and make an *Page 95 
abstract thereof. Such abstract was made, certifying that Mary L. Leak was the owner of the land in fee simple, free and clear of all encumbrances. This abstract omitted any reference to the Steele mortgage which was then unpaid and uncanceled. The Land Bank made the loan and issued a check to Mary L. Leak, borrower, and to the attorney in the sum of $39,790. The Land Bank retained $10,000 of the loan until certain improvements were made upon the property, and when such improvements had been made the balance of the money was paid in the same manner as the former amount. On 19 March, 1926, Mary L. Leak reconveyed the land to the executors and trustees, subject to the said mortgage of $50,000. The Title Guaranty and Insurance Company had a contract with the Land Bank insuring the title to all property upon which the Land Bank made loans. This contract contained a subrogation clause. On 3 February, 1930, Parsons, Leak and Everett, executors and trustees, instituted a suit setting forth the status of the estate of T. C. Leak and requesting an order to close the estate. The North Carolina Joint Stock Land Bank was made a party defendant to the suit, and entered an appearance and requested permission to foreclose the Mary L. Leak deed of trust securing the said sum of $50,000, as the same was then in default. Shortly thereafter the Land Bank learned for the first time of the existence of the Steele mortgage, and that the same constituted a first lien on the property. Pursuant to an order of the court the Land Bank foreclosed its mortgage "and at said sale said bank became the last and highest bidder for the said land at a bid in the sum of $30,000, which was less than the face value of the amount due on its said $50,000 loan." In January, 1931, the Land Bank paid the balance due on the Steele mortgage, to wit, the sum of $7,285.42, and took an assignment from Steele of said note. Subsequently the Title Guaranty and Insurance Company, pursuant to its contract of insurance with said Land Bank, refunded to the said Land Bank the said sum of $7,285.42, and said Steele note and mortgage was surrendered to said Title Company, and the said Title Company is now the equitable owner of said note as the equitable assignee thereof. The referee further found that the Land Bank knew that the money which it was loaning ostensibly to Mary L. Leak, widow, was in fact for the benefit of the estate, and that at the time of the execution and delivery of the deed of trust securing the loan for $50,000 on said "Beaver Dam farm . . . the said lands had a mortgage value for cash sufficient to have paid said $50,000 deed of trust and the said Steele mortgage."
Upon the foregoing facts the referee was of the opinion that the petitioner, Insurance Company, was entitled to recover $7,285.42 against the executors and trustees of the estate of T. C. Leak. Exceptions were *Page 96 
filed to the report of the referee by the widow and by the Insurance Company. The trial judge approved the findings of fact made by the referee and adjudged that the Title Guaranty Company was entitled to recover the sum of $7,285.42 with interest from the executors of the estate of T. C. Leak and of Mary L. Leak as surety on said note.
From the judgment so rendered the Title Guaranty and Insurance Company assigned as error that portion of the judgment decreeing that the judgment against the executors in favor of the insurance company is subordinate "to the claims approved in the prior judgment in favor of the executors for commissions and expenses, and in favor of the widow, Mary L. Leak, for compensation in lieu of dower." Mary L. Leak, the widow, assigns as error that portion of the judgment which decrees that she is personally liable to the Insurance Company on the Steele note.
If a husband and wife execute a note or notes, securing the same by a mortgage on the land of the husband, who receives the proceeds, and thereafter the property is sold by foreclosure under a subsequent deed of trust for a sum in excess of the amount due upon the first lien, is the wife thereby released from personal liability upon the first note or notes?
The Title Guaranty and Insurance Company appeals from the judgment upon the ground that a priority was given therein to certain other claims involved in another branch of this litigation. The insurance company requested permission of the referee to be made a party to the suit. The referee made an order permitting it to become a party, but therein expressly provided that such intervention "shall be heard and determined without affecting or delaying the matters heretofore heard . . . and unaffected by the hearing and determination of issues and questions presented by the said complaint of said movants and the answers and replies thereto." Consequently, when the Insurance Company pursued its rights before the referee it cannot now be permitted to repudiate the limitations imposed in the order. Therefore, the issuable question of law arises upon the liability of Mary L. Leak, the widow, upon the balance of the Steele note, aggregating $7,285.42.
When a married woman joins with her husband in the execution of a note, securing the same with a mortgage or deed of trust upon the *Page 97 
husband's land, and he receives the entire proceeds, she thereby becomes a surety for his debt. Weil v. Thomas, 114 N.C. 197, 19 S.E. 103; Kennedy v.Trust Co., 180 N.C. 225, 104 S.E. 464; Barnes v. Crawford, 201 N.C. 434. The execution of the mortgage was in itself an application of all the property embraced in the mortgage to the payment of the debt secured therein. Harvey v. Knitting Co., 197 N.C. 177, 148 S.E. 45. The balance due on the Steele note upon which Mary L. Leak was surety was $7,285.42. The referee finds that the property securing the note was worth in excess of $57,000. At the foreclosure under the second mortgage or deed of trust the property actually brought $30,000 and the Land Bank became the purchaser at that sum. Thus, it is obvious that the security of the principal debtor, T. C. Leak, was worth much more than enough to discharge the debt, and when the Land Bank purchased the property at the sale the surety, Mary L. Leak, was thereby released. Manifestly, the Insurance Company, upon the principle of subrogation, could have no claim against the surety, Mary L. Leak, superior to that of the Land Bank. Hence, that portion of the judgment imposing a personal liability upon Mary L. Leak as surety is erroneous. In all other respects the judgment is approved.
Affirmed.
ADAMS, J., took no part in the decision of this case.