LENOIR T. MONTSINGER v. CHARLES W. WHITE, ADMINISTRATOR OF THE ESTATE OF HOMER E. MONTSINGER, JR., DECEASED.

(Filed 4 June, 1954.)

**1. Husband and Wife § 14½ : Executors and Administrators § 15c—**

Where the purchaser assumes an existing mortgaged indebtedness on the land and endorses the note secured thereby, and thereafter transfers the land to a third person who reconveys it to him and his wife so as to create an estate by the entireties, *held*, the creation of the estate by the entireties does not affect the liabilities on the note, nor does the acquisition of the property by the wife by survivorship release the husband's estate from liability for the debt.

**2. Executors and Administrators § 15h—**

The holder of a secured claim against an estate must first exhaust the security and apply the same on the debt before he may file a general claim against the estate for the balance due, if any, G.S. 28-105.

**3. Subrogation § 2: Husband and Wife § 14½—**

The surviving wife who pays mortgaged notes on lands theretofore held by them by entireties, is subrogated to the rights of the mortgagee, and is entitled to all the rights and remedies which were available to the mortgagee, but acquires no right or claim beyond those available to him.

**4. Husband and Wife § 14½ : Executors and Administrators § 15e—**

Where the surviving wife pays notes upon which the husband alone was liable, which notes were secured by mortgage on lands theretofore held by entireties, she is subrogated to the rights of the mortgagee, but since the mortgagee could assert no claim against the estate of the husband until he had exhausted the security, the widow, as subrogee of the mortgagee, may not assert a general claim against the husband's estate for any amount in the absence of a contention that the property is worth less than the amount she paid to discharge the mortgage lien, the note not being paid for the benefit of the husband's estate, but to exonerate her own property from the lien.

ERVIN, JOHNSON, and BOBBITT, JJ., dissent.

APPEAL by defendant from *Fountain, Special Judge,* April Term, 1954, of DURHAM.

This is an action instituted by the plaintiff against the administrator of her husband's estate to recover $6,499.44 paid by her on a note held

by the Home Building and Loan Association of Durham, North Carolina, and secured by a deed of trust on premises held by the plaintiff and her husband, at the time of his death, as tenants by the entirety. The following facts are set out in the complaint and admitted in the answer:

1. Homer E. Montsinger, Jr., purchased the property in question and received a deed therefor dated 9 January, 1950, which contains the following: "The party of the second part (the intestate) hereby assumes and agrees to pay, and this property is conveyed subject to the balance due the Home Building and Loan Association under the terms of a Deed of Trust which is recorded in Mortgage Book 377, page 191 . . ."

2. A few weeks after making the above purchase, the intestate married the plaintiff and thereafter conveyed the property to Mrs. Bertha T. Sharpe, who simultaneously therewith conveyed it to Homer E. Montsinger, Jr., and his wife, Lenoir T. Montsinger, thereby creating in the grantees an estate by the entirety.

3. Contemporaneously with the receipt of the deed to the property in question, dated 9 January, 1950, Homer E. Montsinger, Jr., was required by the Home Building and Loan Association to endorse the note held by it and secured by the deed of trust on said property.

4. The husband of plaintiff died intestate on 1 October, 1953, leaving plaintiff widow and three children, one of the children, James Lee Montsinger, being the child of the deceased husband by a former marriage. The plaintiff paid several installments on the note after her husband's death, and the final balance due thereon, totaling $6,499.44. She duly presented her claim to the defendant administrator for the above amount which was rejected. There are insufficient assets in the estate of Homer E. Montsinger, Jr., to pay in full all the general claims filed against it, including the one sued upon herein.

When this cause came on for hearing, the plaintiff moved for judgment on the pleadings. The motion was allowed and his Honor held, upon the pleadings and admissions therein, that the defendant is indebted to the plaintiff in the sum set out in the complaint as a general claim against the estate, and entered judgment accordingly. The administrator appeals, assigning error.

*Albert W. Kennon for plaintiff, appellee.*
*White & White and Daniel M. Williams, Jr., for defendant, appellant.*

DENNY, J. The question to be determined on this appeal is simply this: Did the plaintiff, who neither assumed nor agreed to pay the note secured by the deed of trust on the property held by her and her deceased husband, as tenants by the entirety, but whose deceased husband did assume and

agree to pay the note, have the right to pay the balance due thereon at his death and to file a claim against his estate for the amount paid ?

The fact that the plaintiff became the owner of the property as the surviving tenant in an estate by the entirety, did not thereby release the estate of her husband from liability for the debt. *In re Kershaw's Estate,* 352 Pa. 205, 42 A. 2d 538; *Black's Estate,* 341 Pa. 264, 19 A. 2d 130; *Pieretti v. Seigling,* 134 N. J. Eq. 105, 34 A. 2d 286. Moreover, the character of the estate held by the plaintiff and her husband prior to his death, had no significance in respect to the liability of the parties on the note secured by the deed of trust thereon. *Trust Co. v. Black,* 198 N.C. 219, 151 S.E. 269. But in this jurisdiction when husband and wife execute a note jointly and severally, promising to pay for money loaned to them, or for the purchase of property, and such indebtedness is secured by property held by them as tenants by the entirety, each is primarily liable, jointly and severally, and upon the death of either, his or her estate becomes liable for one-half of the unpaid balance of the secured debt at the time of his or her death even though the decedent's estate gets no part of the property pledged for the debt. *Underwood v. Ward,* 239 N.C. 513, 80 S.E. 2d 267; *Trust Co. v. Black, supra; In re Dowler's Estate,* 368 Pa. 519, 84 A. 2d 209; *In re Kershaw's Estate, supra.*

Furthermore, in receiverships and assignments for the benefit of creditors, a secured creditor may prove his claim for the whole amount before exhausting his collateral security. *Rierson v. Hanson,* 211 N.C. 203, 189 S.E. 502; *Corporation Commission v. Trust Co.,* 200 N.C. 808, 158 S.E. 925; *Bank v. Jarrett,* 195 N.C. 798, 143 S.E. 827; *Milling Co. v. Stevenson,* 161 N.C. 510, 77 S.E. 676; *Winston v. Biggs,* 117 N.C. 206, 23 S.E. 316; *Merrill v. Bank,* 173 U.S. 131, 43 L. Ed. 640. *Cf. Guaranty Co. v. Hood, Com'r. of Banks,* 206 N.C. 639, 175 S.E. 135. The foregoing decisions, however, do not apply generally to secured claims held at the time of the death of a debtor. When a debtor dies, the administration laws, G.S. 28-105, step in and determine the settlement of his estate. In such case, the holder of a note executed or assumed by the deceased, and secured by a deed of trust or mortgage, must first exhaust the security and apply the same on the debt, and may then file a claim against the estate for the balance due, if any. But the holder of such note may not file claim and receive *pro rata* dividend on the basis of the full claim. *Rierson v. Hanson, supra; Chemical Co. v. Walston,* 187 N.C. 817, 123 S.E. 196; *Moore v. Dunn,* 92 N.C. 63; *Creecy v. Pearce,* 69 N.C. 67.

Therefore, in the instant case, the Home Building and Loan Association would not have been permitted, under our decisions, to prove a claim against the estate of Homer E. Montsinger, Jr., until it first exhausted its security, and then only for the balance that might have remained

unpaid after applying as a credit on the indebtedness the net proceeds realized from the foreclosure sale.

The plaintiff was under no legal obligation to pay the note held by the Home Building and Loan Association, and it could not have obtained a personal judgment against her on the note. But when she paid off the note for the purpose of exonerating her own estate from the outstanding lien, she obtained no better position in relation to the debt as against the estate of her husband, than the Building and Loan Association had prior thereto. Even so, by making such payment she became subrogated to its rights. The applicable law governing subrogation in respect to mortgage liens, is succinctly stated in 50 Am. Jur., Subrogation, section 124, page 763, as follows: "A subrogee to a mortgage lien, like other subrogees, is generally entitled to be placed in the precise position of the one to whose rights he is subrogated, and is entitled to all the rights and securities and to the benefit of all the remedies which were available to such person for payment of the debt. But one subrogated to a mortgage lien has no right and no claim beyond those possessed by the creditor. If the creditor acquires by the mortgage only the right to look to the mortgaged property for payment, such right only is acquired or transmitted by subrogation, and the subrogee cannot assert a personal claim or recover a personal judgment against the original mortgagor." *Dowdy v. R. R.* and *Burns v. R. R.,* 237 N.C. 519, 75 S.E. 2d 639; *Parsons v. Leak,* 204 N.C. 92, 167 S.E. 567; *Martin v. Hickenlooper,* 90 Utah 150, 59 P. 2d 1139, 107 A.L.R. 762, and cited cases. See also Anno.—Subrogation—Extent, 107 A.L.R. 785, *et seq.*

Consequently, since there is no contention that the property now held by the plaintiff, exonerated from the lien, is worth less than the amount she paid to discharge the lien, she has no claim she can assert against her husband's estate. The note was not paid for the benefit of his estate, but to release her own property from the lien which was primarily liable for the payment of the debt secured thereby. Hence, the judgment of the court below is

Reversed.

ERVIN, JOHNSON, and BOBBITT, JJ., dissent.