PATRICIA P. COYNE LIPTRAP, Plaintiff v. CHRISTOPHER L. COYNE, ADMINISTRA-
TOR OF THE ESTATE OF LOUIS PATRICK COYNE, Defendant

No. COA08-991

(Filed 5 May 2009)

### 1. Sureties— right to reimbursement of monthly payments from estate of deceased principal—guaranty agreement

The trial court did not err by requiring the estate of a deceased husband to reimburse monthly payments made by plaintiff wife under a guaranty agreement on a note executed by the husband, and compelling the estate to pay the balance of a note, because: (1) *Montsinger*, 240 N.C. 441 (1954), was inapplicable since plaintiff was obligated to pay the note by a guaranty agreement she executed which was a primary, and not a secondary, obligation; and the holding was superseded by statute in 1959 giving a surety who makes payment on the principal debtor's note the right to sue for reimbursement in addition to the common law equitable remedy of subrogation; and (2) N.C.G.S. § 26-3.1 provides plaintiff with ample authority to require defendant administrator to reimburse the amounts which she paid under a guaranty agreement as surety of the deceased.

### 2. Marriage; Sureties— prenuptial agreement—not a waiver of right to reimbursement or subrogation—guaranty agreement

The trial court did not err by concluding that plaintiff wife did not waive her right to reimbursement or subrogation arising from plaintiff's payment of a note under a guaranty agreement based on the parties entering into a prenuptial agreement because none of the language in the prenuptial agreement evidenced an intention on the part of plaintiff to relinquish her statutory right to sue for reimbursement of payments made as surety for a debt of the deceased, and particularly one which was incurred after entry into the agreement.

LIPTRAP v. COYNE

[196 N.C. App. 739 2009)]

Appeal by defendant from order entered 14 May 2008 by Judge W. Allen Cobb, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 28 January 2009.

*L. Patten Mason, for plaintiff-appellee.*

*Forman Rossabi Black, P.A. by T. Keith Black, for defendant-appellants.*

STROUD, Judge.

This case presents two issues for review: (1) whether a surviving spouse who makes payments pursuant to a guaranty agreement on a note executed by her deceased husband is entitled to reimbursement from the estate of the deceased and (2) whether the surviving spouse's suit for reimbursement was barred by the prenuptial agreement entered into by plaintiff and her deceased husband. Because we answer yes to the first question and no to the second, we affirm.

## I. Background

On 6 March 1998, Patricia P. Coyne Liptrap nee Crump ("plaintiff") and Louis P. Coyne ("the deceased") entered a prenuptial agreement. Plaintiff married the deceased on or about 7 March 1998.

On 4 December 2002, plaintiff and the deceased purchased the Sand Dollar Motel in Carteret County, taking it as tenants by the entirety. The deceased executed a promissory note to BB&T in exchange for a loan in the amount of $455,700.00 to purchase the property. Plaintiff and the deceased executed a deed of trust on the property to secure payment of the note. Plaintiff also executed a guaranty of payment of "all indebtedness" of the deceased.

The deceased died intestate on 20 September 2005. After his death, plaintiff made monthly payments on the promissory note to BB&T per the guaranty agreement.

On 23 February 2007, plaintiff filed a verified complaint against the estate of the deceased seeking reimbursement of the monthly payments she had made and an order compelling the estate to pay the balance of the note. Defendant filed an answer on or about 9 May 2007. The answer asserted the affirmative defense of accord and satisfaction, and counterclaimed for breach of the prenuptial agreement.

Plaintiff filed a motion for summary judgment on or about 13 February 2008. The trial court granted the motion for summary judgment on 14 May 2008, ordering defendant to reimburse plaintiff for

monthly payments made to BB&T since the death of the deceased and to pay the balance of the note to BB&T. Defendant appeals.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A trial court's grant of summary judgment receives *de novo* review on appeal, and evidence is viewed in the light most favorable to the non-moving party." *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

## III. Entitlement to Reimbursement

[1] Defendant argues that "[n]o authority exists for requiring [d]efendant to reimburse [p]laintiff for . . . any payments made by [p]laintiff since [her deceased husband's] death." Defendant, citing *Montsinger v. White*, 240 N.C. 441, 82 S.E.2d 362 (1954), contends that "by making payments [plaintiff] has stepped into the shoes of BB&T and must first exhaust the asset [subject to the mortgage] before she can pursue [d]efendant." Defendant further contends that because "the value of the property exceeds the balance owing at the time of Mr. Coyne's death, [p]laintiff has no action for contribution against [d]efendant." We disagree.

*Montsinger* held:

When a debtor dies, . . . the holder of a note executed or assumed by the deceased, and secured by a deed of trust or mortgage, must first exhaust the security and apply the same on the debt, and may then file a claim against the estate for the balance due, if any. . . . [I]n the instant case, the [mortgagee] would not have been permitted, under our decisions, to prove a claim against the estate of [the deceased] until it first exhausted its security, and then only for the balance that might have remained unpaid after applying as a credit on the indebtedness the net proceeds realized from the foreclosure sale.

The plaintiff [surviving spouse] was under no legal obligation to pay the note held by the [mortgagee because the note was endorsed by her deceased husband alone], and [the mortgagee] could not have obtained a personal judgment against [the surviv-

ing spouse] on the note. But when [the surviving spouse] paid off the note for the purpose of exonerating her own estate from the outstanding lien, *she obtained no better position in relation to the debt as against the estate of her husband, than the [mortgagee] had prior thereto.* Even so, by making such payment she became subrogated to its rights.

*Montsinger*, 240 N.C. at 443-44, 82 S.E.2d at 364-65 (emphasis added).

*Montsinger* is unavailing because it is distinguishable on facts. In *Montsinger*, "[t]he plaintiff was under no legal obligation to pay the note" but paid it "for the purpose of exonerating her own estate from the outstanding lien[.]" *Id.* at 444, 82 S.E.2d at 364-65. In the case *sub judice*, plaintiff was obligated to pay the note by a guaranty agreement she executed which was "a primary, and not a secondary, obligation and liability, payable immediately upon demand without recourse first having been had by Bank against the Borrower . . . and without first resorting to any property held by Bank as collateral security[.]" (R 20) Furthermore, in 1959, five years after *Montsinger* was decided, the above-italicized portion of its holding was superseded by statute, giving a surety who makes payment on the principal debtor's note the right to sue for reimbursement in addition to the common law equitable remedy of subrogation. *Compare* N.C. Gen. Stat. § 26-3.1 (2007), *with In re Declaratory Ruling by N. C. Comm'r of Ins.*, 134 N.C. App. 22, 24, 517 S.E.2d 134, 137 ("[T]he [common law] doctrine of subrogation allows a party who has compensated a creditor under the color of some obligation, to step into the shoes of the creditor, thereby succeeding to the creditor's rights to proceed against the debtor for reimbursement." (Citing *Journal Pub. Co. v. Barber*, 165 N.C. 478, 487-88, 81 S.E. 694, 698 (1914))), *appeal dismissed and disc. review denied*, 351 N.C. 105, 540 S.E.2d 356 (1999).

Contrary to defendant's argument, N.C. Gen. Stat. § 26-3.1[1] provides plaintiff with ample authority to require defendant to reimburse

---

1. Section 26-3.1 states:

(a) A surety who has paid his principal's note, bill, bond or other written obligation, *may either sue his principal for reimbursement **or** sue his principal on the* instrument and may *maintain any action or avail himself of any remedy which the creditor himself might have had against the principal debtor.* . . .

(b) The word "surety" as used herein includes a guarantor, accommodation maker, accommodation indorser, or other person who undertakes liability for the written obligation of another.

N.C. Gen. Stat. § 26-3.1 (2007).

the amounts which she paid pursuant to a guaranty agreement as surety of the deceased. Accordingly, this argument is overruled.

## IV. The Prenuptial Agreement

[2] Defendant spends most of his brief arguing that the prenuptial agreement between plaintiff and the deceased controls, therefore any right to reimbursement or subrogation arising from the plaintiff's payment of the note pursuant to the guaranty agreement is trumped by the prenuptial agreement entered into by the plaintiff and the deceased. Defendant argues that by entering the prenuptial agreement plaintiff relinquished all rights to the "separate property" of the deceased. Defendant argues therefrom that because the entire estate consists of the property designated as separate property in the prenuptial agreement, plaintiff is entitled to nothing from the estate to pay the note to BB&T or otherwise. We disagree.

Specifically, defendant relies on the following language in the prenuptial agreement:

> Each party acknowledges that the right of the other to retain, manage, and control such separate property as granted above extends not merely for the duration of the marriage but continues perpetually unless this agreement is revoked . . . . Each party specifically waives relinquishes, renounces and gives up any claim that each may have to the other's separate property under the laws of this state.
>
> . . . .
>
> Prospective wife . . . hereby releases and relinquishes unto Prospective Husband, his heirs [and] executors . . . all . . . rights . . . to any and all property or interest in property, real, personal, and mixed, now owned or hereafter acquired by Prospective Husband, and . . . further does hereby release, relinquish, and renounce any and all right to administer upon his estate.

Defendant contends that this case is analogous to by *Brown v. Ginn*, 181 N.C. App. 563, 640 S.E.2d 787, *disc. review denied*, 361 N.C. 350, 645 S.E.2d 766 (2007), which he contends interpreted a prenuptial agreement with "similar language" to bar a surviving spouse from receiving proceeds derived from the separate assets of her deceased husband which he had specifically devised to his children. We disagree.

"The principles of construction applicable to contracts also apply to premarital agreements. Contracts are interpreted according to the intent of the parties. The intent of the parties is determined by examining the plain language of the contract." *Brown*, 181 N.C. App. at 566-67, 640 S.E.2d at 789-90 (citations, quotation marks and brackets omitted). "A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court. If the agreement is ambiguous, however, interpretation of the contract is a matter for the jury." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 421-22, 547 S.E.2d 850, 852 (2001) (citations and quotation marks omitted).

The prenuptial agreement *sub judice* is plain and unambiguous, therefore subject to judicial interpretation. The dispositive question is whether the prenuptial agreement intentionally waived plaintiff's statutory rights to sue for reimbursement of payments pursuant to a guaranty agreement on a separate obligation of the deceased which was incurred after entry into the prenuptial agreement.

"Waiver is an *intentional* relinquishment or abandonment of a known right or privilege. Almost any right may be waived, so long as the waiver is not illegal or contrary to public policy." *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 10, 558 S.E.2d 199, 206 (2001) (citations and quotation marks omitted and emphasis added), *disc. review denied*, 355 N.C. 493, 563 S.E.2d 190 (2002).

None of the language in the prenuptial agreement *sub judice* evidences an intention on the part of plaintiff to relinquish her statutory right to sue for reimbursement of payments made as surety for a debt of the deceased, particularly one which was incurred after entry into the agreement. The case *sub judice* is distinguishable from *Brown*, where this Court held that proceeds derived from separate property of the defendant's late husband were properly awarded to his estate when the defendant surviving spouse had specifically disclaimed her rights to any proceeds derived from her late husband's separate property. 181 N.C. App. at 567, 640 S.E.2d at 790. Accordingly, this argument is overruled.

## V. Conclusion

Plaintiff's payments pursuant to a guaranty agreement on a note executed by her late husband vested her with a statutory right to seek reimbursement from her late husband's estate. Furthermore, plaintiff did not waive this right in the prenuptial agreement

she entered into with her late husband. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Judges CALABRIA and ELMORE concur.