NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

THE NORTHERN TRUST COMPANY, as )
Personal Representative of the Estate of )
Andrew Shaw, )
                     )
           Appellant, )
                     )
v. )       Case No. 2D15-537
                     )
NATALIA SHAW, )
                     )
           Appellee. )
_____)

Opinion filed June 3, 2016.

Appeal from the Circuit Court for
Sarasota County; Charles E. Williams,
Judge.

Douglas R. Bald and David S. Maglich of
Fergeson, Skipper, Shaw, Keyser,
Baron & Tirabassi, P.A., Sarasota, for
Appellant.

Thomas E. Bishop, Michael G. Tanner,
Casey W. Arnold, and Helen A. Peacock
of Tanner Bishop, Jacksonville, and
Theodore C. Eastmoore of Matthews
Eastmoore, Sarasota, for Appellee.

SILBERMAN, Judge.

           The Northern Trust Company, as personal representative of the Estate of

Andrew Shaw, appeals a final summary judgment awarding Natalia Shaw $500,000

under the terms of a prenuptial agreement. We conclude that Mrs. Shaw is not entitled to the $500,000 distribution because she has already received $500,000 from Mr. Shaw's estate in accordance with the prenuptial agreement. We therefore reverse and remand for further proceedings.

Natalia and Andrew Shaw were married in February 2009. Prior to the marriage, the couple executed a prenuptial agreement that provided for the disposition of their respective assets in the event of their deaths. Under the terms of the agreement, Mrs. Shaw waived all of her rights in Mr. Shaw's estate with exceptions for the following items: (1) the sum of $500,000 from Mr. Shaw's estate conditioned upon neither party having filed a petition for dissolution of marriage, (2) any testamentary gifts made by Mr. Shaw during the marriage, (3) any retirement and pension benefits for which Mrs. Shaw is a named beneficiary, and (4) a life estate in the interest in any principal residence owned by Mr. Shaw.

Mr. Shaw died in September 2012, and Mrs. Shaw received the following pursuant to the agreement: (1) assets Mr. Shaw gifted to her in a tangible personal property list, (2) $480,000 as a named beneficiary of Mr. Shaw's IRA, and (3) $108,977 for her share of a life estate interest in Mr. Shaw's principal residence. She thereafter filed a claim in the probate proceedings seeking the $500,000 distribution. After Northern Trust objected to the claim, Mrs. Shaw filed a complaint in the circuit court seeking damages for breach of contract.

Northern Trust filed an answer in which it asserted two affirmative defenses that are relevant to our decision.[1] As its second affirmative defense, Northern Trust argued that Mrs. Shaw was precluded from receiving the $500,000 distribution because Mr. Shaw had filed a petition for dissolution prior to his death. As its third affirmative defense, Northern Trust argued that Mrs. Shaw was precluded from receiving the $500,000 distribution because she had already received over $500,000 from Mr. Shaw's "estate" as defined in the agreement.

Mrs. Shaw subsequently filed a motion for partial summary judgment in which she argued that she was entitled to the $500,000 distribution under the plain language of the agreement and that Northern Trust's second affirmative defense failed as a matter of law. As to that defense, she asserted that the petition for dissolution was a nullity because Mr. Shaw was incapacitated at the time the petition for dissolution was filed by his counsel and counsel had not complied with statutory requirements for filing as a guardian. The trial court entered an order granting the motion for partial summary judgment.

Mrs. Shaw thereafter filed a motion for final summary judgment in which she contended that the only remaining legal question was Northern Trust's third affirmative defense. Mrs. Shaw acknowledged she had received the assets in the tangible personal property list, the $480,000 IRA distribution, and $108,977 for her share of the life estate interest. But she asserted that the agreement contained provisions entitling her to receive these assets in addition to the $500,000 distribution.

---

[1]Northern Trust also filed a three-count counterclaim that is not at issue herein.

Northern Trust acknowledged that the agreement entitled Mrs. Shaw to receive the life estate interest in addition to the $500,000 but asserted that the IRA distribution and personal property award satisfied the terms of the $500,000 distribution. Northern Trust filed an affidavit averring that the appraised value of the tangible personal property Mrs. Shaw received was $103,996.

The trial court granted Mrs. Shaw's motion for final summary judgment and ruled that she was entitled to be paid $500,000 from the estate. One of Northern Trust's arguments on appeal is that the trial court erred by rejecting its third affirmative defense. We agree and reverse on this basis. We find no merit in Northern Trust's remaining arguments and decline to address them.

The agreement contains a choice of law provision and is to be interpreted under North Carolina law. Under North Carolina law, prenuptial agreements are governed by standard contract interpretation principles. Liptrap v. Coyne, 675 S.E.2d 693, 696 (N.C. Ct. App. 2009). Contracts are interpreted according to the parties' intent, and the parties' intent is ascertained by looking to the plain language of the contract. Id. When a contract defines a term, courts should use that definition. Duke Energy Corp. v. Malcolm, 630 S.E.2d 693, 695 (N.C. Ct. App.), aff'd, 637 S.E.2d 538 (N.C. 2006). Courts should also construe various terms of a contract harmoniously, giving effect to each word and provision. If the contract's meaning is clear and subject to only one interpretation, courts must enforce the contract as it is written. Id. The court's determination regarding the terms of a contract is a question of law to be reviewed de novo. Price & Price Mech. of N.C., Inc. v. Miken Corp., 661 S.E.2d 775, 777 (N.C. Ct. App. 2008).

Paragraph 12 of the agreement provides, in pertinent part, as follows:

12. ESTATES. Notwithstanding the law now in effect or that is in effect in the future concerning the rights of widows or widowers, each party shall receive from the other in the event of death during marriage the following share of the other's estate:

a. So long as neither party has filed a petition for dissolution of marriage from the other, Future Wife shall receive from Future Husband the sum of $500,000.00 from the estate of Future Husband. Future Husband directs his personal representative to provide this sum to the Future Wife as soon after death as can be done. . . .

b. Future Husband shall receive nothing from the estate of Future Wife in the event of her death during marriage. . . .

Each party acknowledges that if the other were to die, whether testate or intestate, during marriage, the share of the decedent's estate to which the party would be entitled or could assert a right to would, except for this Agreement, be greater than provided in this Agreement. For purposes of this Agreement, estate is defined to include either party's probate estate, any living trust created by the party, as well as life insurance, individual retirement accounts, qualified and nonqualified deferred compensation plans and other assets that may pass by beneficiary designation outside of will or trust documents. . . .

(Emphasis added.)

Under the plain language of section 12, Mrs. Shaw is entitled to receive $500,000 from Mr. Shaw's "estate." Using the definition in section 12 as we must, Mr. Shaw's "estate" includes "individual retirement accounts . . . and other assets that may pass by beneficiary designation outside of will or trust documents." Thus, both the $480,000 IRA distribution and the $103,996 worth of testamentary gifts Mr. Shaw named in the tangible personal property list are part of Mr. Shaw's estate.

Because these assets have been distributed to Mrs. Shaw and they total more than $500,000, the terms of section 12(a) have been satisfied. Mrs. Shaw is therefore not entitled to a separate $500,000 distribution under section 12. Interpreting section 12 as Mrs. Shaw suggests would allow her to recover the $500,000 distribution from Mr. Shaw's "estate" twice. She would receive $500,000 from the portion of the "estate" including the IRA and tangible personal property plus an additional $500,000 from the probate portion of the estate. This construction does not comport with the parties' expressed intent.

Mrs. Shaw argues that this construction of the agreement would conflict with the provisions in sections 12 and 18 which afford Mr. Shaw the continuing opportunity to make testamentary gifts and IRA distributions as desired.[2] We disagree. Refusing to allow Mrs. Shaw to recover an additional $500,000 from the estate would not invalidate or detract from any testamentary gifts or IRA distributions provided for by

---

[2]The pertinent portion of section 12 provides the right to make testamentary gifts as follows:

> Neither party intends by this Agreement to limit or restrict the right to give or to receive a testamentary gift from the other. Either of the parties may elect to make a gift to the other by will without invalidating this paragraph and may thereafter change or eliminate the gift by a codicil or another will without in any way affecting the continued effectiveness of this Agreement.

The pertinent portion of section 18 provides the right to provide for IRA distributions as follows:

> Each party waives all right, title, claim or interest he or she may have to any type of pension or retirement plans or benefits of the other including, but not limited to, pension plans, individual retirement accounts and profit sharing plans, except those accounts and plans where the party has been designated as the beneficiary.

Mr. Shaw.  Rather, the result we reach simply recognizes that section 12(a) does not provide for an additional $500,000 payment when Mrs. Shaw has already received at least $500,000 in assets from the estate.

Because Mrs. Shaw has received at least $500,000 from Mr. Shaw's IRA and the items on Mr. Shaw's tangible personal property list, she is not entitled to an additional $500,000 distribution from Mr. Shaw's "estate" under the plain language of section 12.  Accordingly, the trial court erred in granting Mrs. Shaw's motion for final summary judgment on this basis.

Reversed and remanded for further proceedings.

LaROSE and MORRIS, JJ., Concur.