17750

Nora Jackson BLACKWELL, as Administratrix of the Estate of Edmund B. Blackwell, Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant

(118 S. E. (2d) 701)

*Messrs. Nelson, Mullins & Grier,* of Columbia, *for Appellant,*

*John Sloan, Esq.,* of Columbia, *for Respondent,*

February 28, 1961.

OXNER, Justice.

This is a suit on an insurance policy which, among other coverages, contained a provision insuring E. B. Blackwell against loss or damage to his automobile caused by collision or upset. The question for determination is whether the insurer has discharged its liability by paying the amount of the loss to the First National Bank of South Carolina, which held a chattel mortgage on the automobile.

The insured, E. B. Blackwell, purchased a Plymouth automobile from Pulliam Motor Company of Columbia. He borrowed from the First National Bank $748.90 for the purpose of paying the unpaid portion of the purchase price amounting to $700.00, together with an insurance premium of $48-

.90. This loan was evidenced by a note to the bank for $833-.34, dated Janaury 7, 1958, payable in monthly installments of $46.43 each, beginning February 22nd, which was secured by a chattel mortgage on the automobile. (Interest to maturity was included in the amount of the note). This mortgage contained the following provision:

"The mortgagor agrees to pay all taxes and all assessments of any kind whatsoever on the property, and to keep the same insured against fire and theft for not less than the amount of the unpaid balance due on said note, also to carry comprehensive insurance including collision hazard insurance, satisfactory to the Mortgagee, and to keep the property so insured during the life of the mortgage, the policies of insurance to contain a clause that in the event of loss, payments shall be made to the Mortgagee as its interest may appear. Upon the failure of the Mortgagor in any of these respects, the Mortgagee may at its option, either declare this mortgage in default and the outstanding balance due and payable, or may pay said taxes, or so insure, and the costs thereof shall become a part of the debt secured by this mortgage. The proceeds of any insurance, whether paid by reason of loss, injury, return premium or otherwise, shall be applied toward the repair or replacement of the property or payment of the obligation secured by this mortgage, at the option of the Mortgagee."

When the loan was made, the Bank immediately applied to the State Farm Mutual Automobile Insurance Company for comprehensive and collision coverages on the automobile and paid the premium of $48.90. The Company issued to the bank a "binder receipt", acknowledging payment of the premium and agreeing to issue the policy requested "with loss payable to the First National Bank of South Carolina." Several weeks later the policy was issued and delivered to the Bank with a copy to the insured. It provided: "If a mortgage owner, conditional vendor, or assignee is named in the exceptions, loss, if any under coverages (D), (F), and (G) shall be payable to the named insured and to such

additional interest as such interest may appear, * * *."
(G) was the collision coverage. Attached to the printed
policy was a rider giving the policy number, policy period,
amount of premium, etc. and naming the insured as E. B.
Blackwell. Under the heading "Exceptions and Endorse-
ments", there appeared the following: "Finance—First Na-
tional Bank of South Carolina, Columbia, South Carolina."

On January 25, 1958, before any monthly installment be-
came due, Blackwell's automobile was involved in a collision
with another automobile, resulting in some damage to his
car. Before it was moved a third automobile collided with
it, causing additional damage. Blackwell and the Company
agreed that the damage to his car was $425.00 but disagreed
as to the extent of liability under the policy. The Company
took the position that there were two separate collisions and
since the policy had a $100.00 deductible clause, there should
be deducted from the loss $200.00. Blackwall contended,
upon the advice of counsel, that there should be only one de-
duction of $100.00, making the Company's liability $325.00.
Blackwell died on February 26, 1958 before the dispute was
settled. The only asset left by him was the insured automo-
bile. After waiting some time for the administratrix of Black-
well's estate and the Insurance Company to settle, the Bank
finally demanded payment of the loss and on January 28,
1959 the Insurance Company paid it the sum of $225.00.

This action was instituted by the administratrix on Au-
gust 31, 1959. On the trial of the case each party made a
motion for a directed verdict. The Court below refused that
of the Insurance Company and directed a verdict for the
plaintiff in the sum of $325.00, representing the loss of $425-
.00 less $100.00 under the deductible clause. No question is
raised on this appeal as to whether this deduction should be
$100.00 or $200.00. It is stated in the record that the sole
question "is whether or not respondent was entitled to a
directed verdict for $325.00, the admitted amount of the
loss payable under the policy."

The correctness of the conclusion of the Court below depends upon what interest, if any, the Bank had in the proceeds of the insurance. Appellant contends (1) that the policy provisions have the same effect as the ordinary loss payable clause, and (2) that apart from the insurance contract, the covenant to insure contained in the chattel mortgage gave the Bank an equitable lien on the proceeds to the extent of its mortgage indebtedness. Accordingly, it is argued by appellant that under either view the Insurance Company was justified in paying the amount of the loss to the Bank. Respondent says that the insurance contract was one solely between Blackwell and appellant and that the loss was payable to Blackwell alone. Respondent argues that Blackwell's obligation was "to keep the property insured during the life of the mortgage" and if he failed to do so, the Bank had two remedies—"one was to declare the note due in full; the second remedy was to insure the car themselves and add the premium therefor on the note and they did neither one."

We find it unnecessary to determine whether the policy provisions have the same effect as a loss payable clause, for we think it is clear that under the circumstances, the Bank had an equitable lien on the insurance proceeds to the extent of the mortgage indebtedness, amounting, after crediting an interest refund, to $786.42, which was far in excess of the sum of $325.00 which respondent claimed was the proper amount of the loss.

It is well settled that if the mortgagor is bound by covenant in the mortgage or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property damaged or destroyed. *Swearingen v. Hartford Fire Insurance Co.*, 52 S. C. 309, 29 S. E. 722; *Farmers' & Merchants' National Bank of Lake City v. Moore,* 135 S. C. 391, 133 S. E. 913, 47 A. L. R. 1001; Annotation 92 A. L. R. 559. On page

561 of this annotation, it is stated: "This equitable lien arises solely from the unperformed contract to protect, the theory being that since equity regards as done that which ought to have been done, if the mortgagor, having so covenanted, fails to make the insurance payable to the mortgagee, or to assign the same, the fund arising therefrom is within the operation of the maxim."

There is no merit in respondent's contention that the Bank's only remedy for the breach of the contract to insure was to insure the car itself and add the premium to the amount of the note. As pointed out in the above annotation and in *Farmers' & Merchants' National Bank of Lake City v. Moore, supra,* the rule giving an equitable lien is not affected by the fact that the covenant to insure provides that if the mortgagor fails to procure insurance and have the same made payable as agreed, the mortgagee may take out a policy of insurance at the expense of the mortgagor.

Under *Gibbes Machinery Co. v. Niagara Falls Insurance Co.,* 119 S. C. 1, 111 S. E. 805, 21 A. L. R. 1460, if appellant, with knowledge of the covenant to insure for the benefit of the Bank, had without its consent, paid the amount of this loss to Blackwell, the right of the Bank to enforce its equitable lien would not have been affected and the Bank could have recovered against appellant the amount of the loss.

Respondent seeks to distinguish the phraseology of the covenant under consideration from that considered in some of the cases by arguing that Blackwell did not expressly agree to insure the car "for the benefit of the bank or assign the policy or make the bank a joint payee" but we think the covenant here was entirely sufficient to create an equitable lien on the proceeds of any loss payable under the terms of the policy.

It follows that whatever liability there may be under the policy must be credited with the sum of $225.00 paid to the

Bank. Therefore, the Court below erred in directing a verdict for respondent for $325.00, which is the full amount of the loss payable under the policy. That is the only question now presented. We leave undecided the question of the liability, if any, of appellant for the further sum of $100.00, representing the difference between the amount paid to the bank and the amount which respondent claims was due under the terms of the policy, and if such liability exists, to whom it should be paid. *Cp. Riley v. Federal Insurance Co.*, 60 Ga. App. 764, 5 S. E. (2d) 246.

Judgment reversed and the case remanded for further proceedings in accordance with the views herein expressed.

TAYLOR, LEGGE and Moss, JJ., concur.