0536

Richard K. FRESHWATER, Respondent, v. COLONIAL PRODUCTION
CREDIT ASSOCIATION, Appellant.

(334 S. E. (2d) 142)

Court of Appeals

*William B. Regan,* Charleston, and *Wendell O. Brown,* Kingstree, *for appellant.*

*Mark C. Tanenbaum,* Charleston, *for respondent.*

Heard April 15, 1985.

Decided Aug. 19, 1985.

BELL, Judge:

Richard K. Freshwater brought this action for damages against Colonial Production Credit Association, alleging Colonial failed to protect his subrogated interest in a lien on the shrimpboat *Apache,* owned by Richard's brother, Alvin Freshwater. The circuit court granted Richard summary judgment for $29,830.84 and Colonial appealed. During the pendency of the appeal, Colonial moved for a partial new trial on the issue of whether Richard's judgment had been satisfied by a covenant not to execute made between him and Alvin. After trial of that issue, the circuit court held the judgment was not satisfied. Colonial then filed a second appeal. The two appeals were consolidated for hearing and decision in this Court. We reverse the original summary judgment against Colonial.

The facts of the case are undisputed. Alvin, who is not a party to this action, applied to Colonial for a loan to buy the shrimpboat *Apache*. Alvin's collateral was insufficient to secure the loan, so Richard, his brother, agreed to grant Colonial a second mortgage on real property he owned as additional security. Colonial lent Alvin $49,360 secured by the *Apache*, Alvin's real property, and the second mortgage on Richard's property. Richard neither signed the promissory note nor received any loan proceeds.

In 1977, Richard defaulted on his first mortgage. The first mortgagee instituted foreclosure, naming Colonial as a party defendant. Colonial cross claimed for foreclosure of its second mortgage. It received a net sum of $21,085.65 from the sale of Richard's property. This amount was credited to reduce Alvin's debt.

In early 1979, the *Apache* was involved in a collision with another boat off the coast of Florida and sank. Alvin received insurance proceeds of $65,000 for loss of the vessel. Colonial was not named a loss payee in the insurance policy and there is no indication in the record it received payment from the insurance company.

In July and August 1979, Richard sent four letters to Colonial giving notice that he claimed subrogation to Colonial's rights against Alvin, because Alvin's debt had been reduced by $21,085.65 from the proceeds of the mortgage foreclosure. He warned Colonial that it should do nothing to injure his subrogated interest, including satisfying the lien on the *Apache*. In October 1979, Alvin paid Colonial the $22,996 balance on the note. In return, Colonial satisfied the note and the mortgage on the *Apache*.

Richard thereafter sued Alvin to recover the money Colonial had applied to reduce Alvin's indebtedness. The suit was settled and judgment was entered against Alvin for $27,430.66. As part of the settlement, Richard also signed a covenant not to execute on the judgment in excess of $14,800.

Richard subsequently executed on the judgment against Alvin. The execution was returned *nulla bona*. He eventually received payments from Alvin totalling $14,800 in satisfaction of the judgment.

Richard then sued Colonial seeking damages for Colonial's failure to protect his right to be subrogated to the note and

the mortgage lien on the *Apache*. The circuit court granted Richard summary judgment for $29,830, representing the principal amount of the foreclosure proceeds applied to Alvin's debt plus interest, attorney's fees, and costs.

## I.

For purposes of this appeal, we assume without deciding that Richard was equitably subrogated to Colonial's rights as a secured creditor of Alvin. We further assume that Colonial's release of the note and the lien on the *Apache* was wrongful as to Richard. The issue for our decision is whether Richard was damaged by satisfaction of the note and the mortgage.

A subrogee to a mortgage lien is generally entitled to ██ be placed in the precise position of the person to whose rights he is subrogated, and he is entitled to all securities and remedies which were available to such person for payment of the debt. *Montsinger v. White*, 240 N. C. 441, 82 S. E. (2d) 362 (1954). Subrogation confers no right on the subrogee not possessed by the person whose claim he takes. *Parsons v. Leak*, 204 N. C. 92, 167 S. E. 567 (1933). In this case, Richard claims he was subrogated to Colonial's rights under both the note and the mortgage on the *Apache*.

Subrogation to Colonial's rights under the note would have given Richard the right to sue Alvin for a personal judgment in the amount he had advanced to reduce Alvin's debt. However, Richard's counsel admitted in oral argument that Richard was not damaged by the loss of this right. Richard had already reduced his claim to a personal judgment against Alvin; but it was worthless because Alvin was judgment proof. He would have been in no better position had he been subrogated to Colonial's rights under the note. *Cf.* Restatement of Restitution Section 162, comment *g.* (1937) (one subrogated to unsecured claim ordinarily derives no advantage from exercising rights of subrogation since his direct remedy against the obligor is just as good as his remedy by subrogation).

We reach a similar conclusion as regards the lien on the *Apache*.

Counsel concedes that since the *Apache* sank in a collision, Richard could have obtained nothing by foreclosure on the

vessel itself.[1] However, he argues, Colonial, and hence Richard, had a right to realize its security out of the insurance proceeds on the boat. Thus, he reasons, the right to foreclose was a valuable right which was destroyed when Colonial satisfied the lien.

■ An insurance policy is purely a personal contract between the insurer and the insured, and hence a mortgagee of insured property has no interest, either in law or in equity, in a policy of insurance obtained by the mortgagor in his own name and for his own benefit. *Swearingen v. Hartford Insurance Co.*, 52 S. C. 309, 29 S. E. 722 (1898). If, however, the mortgagor covenants in the mortgage to keep the property insured as further security for the payment of the mortgage debt, then the mortgagee is entitled to an equitable lien upon the insurance proceeds, even though the policy is in the name of the mortgagor alone. *Id.; Blackwell v. State Farm Mutual Automobile Insurance Co.*, 237 S. C. 649, 118 S. E. (2d) 701 (1961).

Alvin covenanted in both the note and the mortgage on the *Apache* to insure the vessel for Colonial's benefit. He further agreed to deliver the insurance policy to Colonial as additional collateral. In the event Alvin failed to procure such insurance, Colonial had the right to insure its interest in the vessel and add the premium to the principal amount of the indebtedness. It is undisputed that Alvin insured the vessel for his own benefit, but he failed to include Colonial as a loss payee on the policy. Colonial never demanded delivery of the policy nor did it exercise the right to insure the vessel on its own behalf. The note contained an acceleration clause providing that a breach of any covenant by Alvin would entitle Colonial to declare the entire outstanding indebtedness immediately due.

On these facts, subrogation to Colonial's rights would have given Richard an equitable lien on the insurance proceeds to the extent Colonial used his money to reduce Alvin's debt. However, the lien would be effective only if (1) before payment of the proceeds to Alvin, Richard gave notice to the

---

[1] At one point in his deposition testimony, Alvin stated he thought the *Apache* had been salvaged by a private salvor. However, he admitted he did not know what had happened. At another point in his testimony, when asked if the vessel was salvaged, he answered: "It was totaled; it was a total loss."

insurance company of his equitable interest or (2) after payment by the insurance company without such notice, there were identifiable proceeds of the insurance policy to which the lien could attach. *Blackwell v. State Farm, supra; see Arnold v. Porter,* 122 N. C. 242, 29 S. E. 414 (1898). In this case, neither condition was met.

There is no evidence Richard gave the insurance company notice of his interest in the insurance proceeds before they were paid to Alvin. Moreover, the record indicates Alvin dissipated the insurance money shortly after the claim was paid, leaving nothing to which the equitable lien could attach. The record simply does not permit an accounting of how the money was spent.[2] While it is conceivable Richard might have traced the proceeds, he did not do so on the record before us. Thus, we are left to conclude the equitable lien could not have been enforced even if Colonial had not satisfied the mortgage on the *Apache.* Consequently, satisfaction of the lien caused Richard no damage.

## II.

Richard also argues that Colonial breached a duty to keep the *Apache* insured for his benefit as subrogee. He contends this duty was imposed by the Uniform Commercial Code and by the terms of the mortgage instrument. He asserts the breach of this duty as an additional ground for sustaining the judgment against Colonial.

Section 36-9-207, Code of Laws of South Carolina, 1976, requires a secured party to use reasonable care in the custody and preservation of collateral in his possession. However, unless otherwise agreed, when the collateral is in the secured party's possession, the risk of accidental loss is on the debtor, not the secured party, to the extent of any deficiency in insurance coverage. Code Section 36-9-207(2)(b). Section 36-9-207 is not applicable to this case, because Colonial was not in possession of the collateral. Therefore, Colonial had no duty under this section to insure the collateral.

---

[2] The record does not indicate when Alvin received the money, nor how he disposed of it. In his deposition, Alvin testified that by June 1980, eight months after he paid Colonial, he had no assets at all in South Carolina.

We likewise hold there was no duty to insure under the terms of the mortgage. That instrument gave Colonial the *right* to insure the *Apache* for its own benefit if Richard failed to do so. It imposed no *duty* on Colonial to procure insurance. We reject the argument that because Colonial applied proceeds from the foreclosure of Richard's property to reduce Alvin's indebtedness, it had a duty to Richard to insure the *Apache* for his benefit. Absent an agreement imposing such an obligation, a mortgagee has no duty to a surety to insure collateral in the hands of the mortgagor for the benefit of the surety. *See Kissire v. Plunkett-Jarrell Grocer Co.,* 103 Ark. 473, 145 S. W. 567 (1912).

### III.

Because the original judgment against Colonial must be reversed, it is unnecessary to decide whether the circuit court correctly held Richard's covenant not to execute against Alvin did not operate to release his judgment against Colonial.

Reversed.

SANDERS, C. J., and SHAW, J., concur.