In re Robert L. NATALE, Jr., Gail Natale, Debtors.

Edward D. PARE, Jr., Receiver of Rhode Island Central Credit Union, Plaintiff,

v.

Robert L. NATALE, Jr., Gail Natale, Defendants.

Bankruptcy No. 92–11670.
Adv. No. 92–1127.

United States Bankruptcy Court, D. Rhode Island.

Nov. 23, 1994.

Anthony S. Buglio, Fortunato & Tarro, Warwick, RI, for debtors/defendants.

Adam C. Robitaille, Edward Avila, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, for plaintiff.

Matthew J. McGowan, Chapter 7 Trustee, Salter, McGowan, Swartz & Holden, Inc., Providence, RI.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on July 28, 1994, on the Plaintiff's motion to determine ownership to $25,000 in insurance proceeds paid by CIGNA Property & Casualty Insurance Company ("CIGNA"), as the result of a casualty loss to the Debtors' real property on December 21, 1991.

The relevant facts, which are not in dispute, are as follows: Robert L. Natale, Jr. and David Campopiano were joint owners of commercial real estate located at 81 Wild Street, Providence, Rhode Island. Rhode Island Depositors Economic Protection Corporation ("DEPCO"), the successor-in-interest to Rhode Island Central Credit Union ("RICCU"), holds a note in the original principal amount of $3,500,000, secured by a mortgage on the subject property.

The mortgage agreement contains the following standard language:

> Insurance against loss by fire, flood where required ... shall be kept and maintained on the buildings and improvements on the premises ... and that the policy or policies of such insurance shall be assigned, transferred and made payable in case of loss to, and held by Mortgagee as collateral security.... Mortgagee, its successors and assigns, shall have the right and are hereby constituted and appointed the true and lawful attorney or attorneys, to ... adjust, sue for, compromise and collect any amounts due under said insurance policies in the event of loss....

Mortgage Agreement, at ¶ 5. Campopiano and Natale had placed fire and casualty insurance on the property through CIGNA, but failed to list RICCU either as a lienholder or as loss payee. Neither did they assign or deliver the policy to CIGNA as collateral, as required under their contract.

On December 21, 1991, the property was damaged when water pipes burst and flooded the building. Six days later, Campopiano and Natale retained the law firm of Fortunato & Tarro to handle the claim, and they executed a one-third contingency fee agreement, in further breach of their agreement with CIGNA. On February 11, 1992, Edward Feldstein, Esq., RICCU's attorney, sent a letter to CIGNA referring to its secured interest in the insurance proceeds, and requested that RICCU be included as payee on any checks issued in connection with the loss. Mr. Feldstein sent a copy of this letter to Mr. Tarro. Tarro did not respond to Feldstein's letter, but instead, on February 28, 1992, wrote to CIGNA stating:

> It is understood that CIGNA will forward to me a check in the amount of $25,000 as partial payment towards the loss in question. Please note that even though Rhode Island Central Credit Union has a mortgage on the subject property, it is not listed as loss payee under the policy. Rhode Island Central Credit Union is presently in receivership. So as to avoid undue delay in initiating temporary repairs, I would request that advance check of $25,000 be issued in my name as attorney for Robert Natale and David Campopiano.

On March 25, 1992, Tarro received a draft in the amount of $25,000 from CIGNA, and without RICCU's consent, deducted, inter alia, a fee of $8,333 from those proceeds. On April 7, 1992, Feldstein wrote to Tarro advising that RICCU/DEPCO intended to exercise its rights under the mortgage by dealing directly with CIGNA, and demanded that Tarro turn over the $25,000 he received from CIGNA. Again there was no response from Tarro, and on May 1, 1992, RICCU filed a civil action in the Providence County Superior Court against Campopiano and Natale, seeking damages and a declaratory judgment establishing its entitlement to the full amount of the insurance proceeds paid on account of the December 21, 1991 loss.

After delaying RICCU for more than a year in the state court, Campopiano and

Natale each filed Chapter 11 petitions on June 1, 1992. In August 1993, after another thirteen months, and going nowhere in Chapter 11,[1] both cases were converted to Chapter 7. After the conversion, RICCU finally obtained relief from stay to proceed with its civil action against the Debtors, and on December 9, 1993, a Justice of the Providence County Superior Court entered the following Order:

> (T)he Plaintiff has the sole right to negotiate, compromise, and settle the claims for casualty losses to the defendant's properties. All funds paid to defendants, and/or their agents, pursuant to such claims shall be returned to the Trustees of the bankruptcy estates of the defendants, except *attorneys' fees earned* and out-of-pocket costs paid pursuant to the retainer agreement between the law firm of Fortunato and Tarro and the defendants, Robert L. Natale, Jr. and David Campopiano. The funds shall be held by the Trustees until entitlement to the funds is determined by that Court. (Emphasis added.)

*Paradis v. Campopiano,* C.A. No. 92-2723 (Providence County Superior Court Dec. 9, 1993). Pursuant to said Order, $7,583.50 was paid to Matthew McGowan, Esq., the Trustee in the Natale case, and $7,583.50 was paid to Marc Wallick, Esq., the Campopiano Trustee.[2]

Subsequently, the Debtors filed motions to amend Schedule C of their respective petitions, each claiming $4,150 of the insurance proceeds as exempt under 11 U.S.C. § 522(d)(5). The Chapter 7 Trustees objected, and on February 9, 1994, a hearing was held on the exemption issue. Both Trustees argued that the Court should determine the ownership of the insurance proceeds *before* considering the exemption issue. We agreed with that position, and *conditionally* allowed the exemptions, but only in the event that the Debtors were ultimately determined to be the owners of the disputed insurance pro-

ceeds.[3] With the ownership issue now before us, for the reasons stated below, we make the following findings and conclusions.

## DISCUSSION

In resolving the several matters in dispute, a number of issues need to be addressed: (1) whether the mortgagee has an equitable and/or contractual lien on the insurance proceeds; (2) whether the proceeds are property of the estate, pursuant to 11 U.S.C. § 541(a), which may be claimed as exempt by the Debtors; (3) the reasonableness of the compensation appropriated by the law firm of Fortunato & Tarro; and (4) whether the conduct of the Debtors and/or their attorney calls for the imposition of sanctions. For the reasons given below, we resolve all disputed issues adversely to the Debtors and their attorney, Thomas Tarro, Esq.

■ To begin with, the Debtors failed to name the mortgagee as the loss payee on their insurance policy, notwithstanding Paragraph 5 of the mortgage agreement which requires the insured to do so. Courts addressing this problem have acknowledged the equitable rights of the mortgagee, even where the mortgagor has elected to ignore those rights. If the "mortgagor covenants in the mortgage to keep the property insured as further security for the payment of the mortgage debt, then the mortgagee is entitled to an equitable lien upon the insurance proceeds, even though the policy is in the name of the mortgagor alone." *Freshwater v. Colonial Production Credit Ass'n,* 286 S.C. 387, 334 S.E.2d 142, 144 (Ct.App.1985) (citing *Blackwell v. State Farm Mutual Automobile Insurance Co.,* 237 S.C. 649, 118 S.E.2d 701 (1961)); *Nichols v. Baxter,* 5 R.I. 491 (1858). The court in *Nichols* recognized the obligation of an equity court to protect the mortgagee's secured claim. *Nichols,* 5 R.I. at 494. Based on these authorities and the

---

1. Neither Debtor filed a plan or disclosure statement, nor did they take any of the preliminary steps to demonstrate that a good faith reorganization was ever in prospect.

2. When added to the $8,333 fee paid to Fortunato & Tarro, these payments total $23,500. This

leaves a difference of $1,500 which we assume was used for emergency repairs to the property.

3. The funds in question were ordered to be paid over to the Trustees pending resolution of the entitlement issue.

undisputed facts[4] in the instant case, we conclude that this Court has the authority, and indeed the duty, to impose an equitable lien in favor of RICCU on the insurance proceeds in question, and it is so ORDERED. Additionally, and quite aside from equitable considerations, we conclude that pursuant to paragraph 5 of the mortgage agreement RICCU also has a contractual lien on the funds in question.

In determining whether such insurance proceeds are property of the Estate, we are guided by the broad scope of § 541, which provides that the debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate includes any rights the debtor may have under a policy of insurance which is in effect on the date of filing. *In re Dennison*, 84 B.R. 846 (Bankr.S.D.Fla.1988). In the instant case, the draft issued in partial settlement of the fire loss was made payable to the Debtors. Therefore the proceeds, prima facie, at least, are property of the estate under 11 U.S.C. § 541(a). In light of our conclusion above, i.e., that RICCU has a contractual as well as an equitable lien[5] on the proceeds, the Debtors-in-possession, and thereafter their Trustees, hold these funds *subject to* said lien, on behalf of the mortgagee.

This in turn impacts negatively on the Debtors' claimed exemptions, which were allowed *only conditionally* at the February 4, 1994, hearing, with the final ruling to be dependent on the outcome of the ownership/entitlement issue. With that question now resolved in favor of RICCU, the exemptions claimed by both Debtors are denied. Accordingly, each Trustee is ordered to distribute $7,583.50 to RICCU/DEPCO.

The next question involves the reasonableness of the prepetition fee of $8,333 paid to the law firm of Fortunato & Tarro. As we noted at the July 28, 1993, hearing, although RICCU is not bound by the terms of the retainer agreement, compensation would probably be due to *somebody* for creating the fund in question, and that the issue is the reasonableness of the compensation for performing such services. Accordingly, Thomas Tarro, Esq., is ORDERED to file a detailed fee application within 30 days, describing the time expended and the services required to obtain the $25,000 partial payment from CIGNA.

Finally, it appears that RICCU should be compensated for the legal and other expenses associated with its having to pursue the Debtors for nearly three years to collect funds that it should have received long ago, but for Mr. Tarro and the Debtors' obstructionism. Accordingly, Thomas Tarro, Esq., Robert Natale, and David Campopiano are ORDERED TO SHOW CAUSE, on January 11, 1995, at 9:30 a.m., why they should not be sanctioned for their intentional and improper interference with RICCU's right to collect and receive the insurance proceeds in question. At the hearing on the Order to Show Cause, Tarro, Natale, and Campopiano will have the burden to rebut the current presumption that they acted improperly in their dealings with RICCU herein. Having been thus forewarned, written responses should be filed by all three respondents, at least 7 days prior to the hearing on the Order to Show Cause.

Enter Judgment consistent with this opinion.

---

4. We are aware of no circumstances that would justify Mr. Tarro's purposeful end run around RICCU's entitlement to the proceeds. To the contrary, the record is full of indicia that he was acting wilfully throughout this matter, beginning with his disregard of Mr. Feldstein's February 1992 letter, and ending with his claiming highly questionable exemptions on behalf of both Debtors, for property in which they clearly did not have a colorable claim, vis-a-vis the secured creditor.

5. In light of our ruling that RICCU's lien is contractual as well as equitable, said lien does not fit within any of the avoidable § 522 categories. Accordingly, said funds may not be claimed as exempt by the Debtors.