**In re Charles F. MUNROE, Debtor.**

**Bankruptcy No. 95–10685.**

United States Bankruptcy Court,
D. Rhode Island.

June 30, 1995.

---

Ken Russell Slade, Narragansett, RI, for debtor.

Dennis Cryan, South Yarmouth, MA, pro se.

Office of U.S. Trustee, Sheryl Serreze, Providence, RI.

### ORDER DENYING DEBTOR'S MOTION FOR SANCTIONS AND ATTORNEY FEES

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Debtor's Motion for Sanctions against Dennis Cryan for an alleged willful violation of the automatic stay, 11 U.S.C. § 362(h).

The travel and relevant facts are as follows: On March 24, 1995, Charles Munroe filed a petition under Chapter 11.[1] Later that same day, Dennis Cryan entered the Debtor's restaurant and, by the use of self-help, removed a computerized cash register and related equipment that allegedly was "on loan" to the Debtor. On April 13, 1995 after an emergency hearing, demanded by the Debtor, Cryan returned the equipment to the Debtor's restaurant, to reinstate the (pre-petition) status quo until a complete evidentiary hearing could be held. The full hearing was held on April 26, 1995.

Upon consideration of the entire record, the arguments of the Debtor, the United States Trustee, and the pro se Dennis Cryan, we find: (1) that the equipment seized by Cryan on March 24, 1995, was not property of the estate; (2) that Munroe had no legal, equitable, or other interest in the property; and (3) that Munroe has shown no damage as a result of Cryan's alleged violation of 11 U.S.C. § 362(a)(3).

---

1. On May 12, 1995, the Debtor filed a notice of voluntary conversion to Chapter 7.

The evidence upon which our conclusions are based is as follows: Cryan was initially contacted by Munroe on January 25, 1995, at which time Munroe stated that it was imperative that he obtain a point of sale, computerized cash register system for his restaurant which was scheduled to open *in eight days.* Cryan accepted the challenge, worked diligently to meet Munroe's time demands, and got the system installed within the limited time available. Also, due to the expedited manner in which this job needed to be handled, Cryan (unwisely) postponed the paperwork and just considered the equipment to be "on loan" until the parties could finalize a formal leasing arrangement. Not surprisingly, this arrangement was also fine with Munroe. After the physical installation was completed, Cryan began his search for a lender willing to provide Munroe with a lease-financing arrangement. In the hunt for financing it quickly became apparent, however, due to Munroe's lackluster (but previously undisclosed) credit history, that Cryan would have a difficult time finding a lender willing to extend credit to Munroe.

On February 13, 1995, Cryan did find a lender, but only with the participation of a responsible co-signer. Munroe agreed to the condition, and assured Cryan that his father would co-sign and return the executed lease to Cryan, forthwith. Weeks passed, and Cryan made repeated attempts to obtain the executed lease from Munroe, but each time Munroe had an excuse as to why he did not have the lease, and reassured Cryan it would be produced shortly. In the meantime, Munroe was using Cryan's equipment, which Munroe stressed was "indispensable to the operation of the business." As of the date of the Chapter 11 filing, Munroe had not produced an executed, co-signed lease.

## DISCUSSION

■ The filing of a Chapter 11 petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.

§ 362(a)(3). We acknowledge, and have held many times that the definition of *property of the estate* under 11 U.S.C. § 541 is very broad, and encompasses all equitable and legal interests the debtor may have in property as of the commencement of the case, "wherever located and by whomever held." 11 U.S.C. § 541(a)(1); *Pare v. Natale (In re Natale),* 174 B.R. 362, 365 (Bankr.D.R.I. 1994). However, based on the facts of the instant case, including Mr. Munroe's delay and ultimate default on the execution of the lease, he had acquired no legal *or equitable* interest in the cash register equipment, as of the commencement of this case. Quite to the contrary, Munroe's pre-petition conduct belies and is totally inconsistent with his present position. "[T]here is hardly any question that an entity which has no legal or equitable interest in the property and has nothing more but a bare possession has no interest which qualified to be the 'properties of the estate.'" *In re Terramar Mining Corp.,* 70 B.R. 35, 38 (Bankr.M.D.Fla.1987).

■ While it can be argued that Cryan's actions are violative of the automatic stay because he took property "from the estate," *see* H.R.Rep No. 595, 95th Cong., 1st Sess. 341, U.S.Code & Admin.News 1978, pp. 5787, 6298, we find, based upon the specific facts of the instant case, that Cryan's actions neither technically nor substantively violated the stay. Although it certainly is risky business to reclaim one's own property post-petition, in certain limited circumstances it is possible to do so without running afoul of § 362.[2] Based on the entire record, this is such a case.

Accordingly, in light of our conclusion that the property in question is not (and never was) property of the estate, together with the fact that Munroe has no equitable considerations going for him, the Debtor's motion for sanctions and attorney fees is DENIED.

Enter Judgment consistent with this order.

---

**2.** Cryan returned the equipment to the Debtor when ordered to do so, based upon allegations

that the Debtor was unable to support at hearing.