STEVEN BUELTEL, Plaintiff v. LUMBER MUTUAL INSURANCE COMPANY, also known as Lumber Insurance Companies, Defendant

No. COA98-1006

(Filed 17 August 1999)

**1. Declaratory Judgments— actual controversy—restrictive non-competition provision**

The trial court did not err in a declaratory judgment case by finding an actual controversy exists involving an agreement containing a restrictive non-competition provision because the parties were not asking the trial court to interpret the document in anticipation of future acts, but in light of past and present action.

**2. Declaratory Judgments— restrictive non-competition provision—validity and enforceability of a contract**

The trial court did not err in a declaratory judgment action by holding the agreement containing a restrictive non-competition provision was void and unenforceable because although the trial court may not nullify a duly probated will except upon appeal, it may determine the validity and enforceability of a contract under the Declaratory Judgment Act. N.C.G.S. § 1-254.

**3. Contracts— choice of law—exception to place where contract made—restrictive non-competition provision**

The trial court's order granting summary judgment for plaintiff-former employee in a declaratory judgment action involving an agreement containing a restrictive non-competition provision is reversed and remanded because it is unclear whether the agreement was construed and interpreted under North Carolina or Massachusetts law. Massachusetts law governs in this case

**BUELTEL v. LUMBER MUT. INS. CO.**

[134 N.C. App. 626 (1999)]

because when a choice of law provision is included in a contract, the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it was made.

Appeal by defendant from judgment entered 1 April 1998 by Judge J. Marlene Hyatt in Mecklenburg County Superior Court. Heard in the Court of Appeals 1 April 1999.

*Mitchell, Rallings, Singer, McGirt, & Tissue, PLLC, by Allan W. Singer, for plaintiff-appellee.*

*Jackson, Lewis, Schnitzler & Krupman, by Edwin G. Foulke, Jr. and Kristin E. Toussaint, for defendant-appellant.*

HUNTER, Judge.

Briefly, the evidence presented to the trial court indicates that in April 1994, plaintiff Steven Bueltel ("Bueltel") was hired as a sales associate by defendant Lumber Mutual Insurance Company ("Lumber Mutual"), a company engaged in the business of writing insurance policies to lumber and related industries. At that time, Lumber Mutual asked Bueltel to execute an employment contract which contained confidentiality and non-competition restrictions, and he complied. Bueltel was promoted to sales associate in November 1994 and to account representative in February 1995. In 1996, Lumber Mutual requested that Bueltel sign a second, amended employment contract ("Agreement"), which he did on 25 February 1996. The Agreement was necessary because Lumber Mutual was in the process of standardizing its employment contract with its employees, who would thereafter be subject to standard terms and conditions of employment. Bueltel was not offered a promotion or additional compensation, commission, bonuses or sales territory in exchange for his signature on the Agreement. The Agreement contained a more restrictive non-competition provision, a more expansive description of "policyholder," and a clause which stated that it was to be construed and enforced under the laws of Massachusetts.

On 1 April 1997, Bueltel was promoted to account executive; however, he resigned from his position with Lumber Mutual on 24 June 1997. On 1 July 1997, Bueltel began a new job selling insurance for Indiana Lumbermens Mutual, a competitor of Lumber Mutual. Lumber Mutual corresponded with Bueltel several times from June to August 1997, informing him that he had continuing obligations to

BUELTEL v. LUMBER MUT. INS. CO.

[134 N.C. App. 626 (1999)]

Lumber Mutual pursuant to the Agreement and requesting that he discontinue violating confidentiality and non-competition clauses found therein. Bueltel filed a declaratory judgment action against Lumber Mutual on 26 November 1997, asking the court to construe the rights and liabilities of the parties and declare the Agreement unenforceable. Beultel moved for summary judgment, which was granted on 1 April 1998. Lumber Mutual appeals.

[1] Defendant Lumber Mutual first contends that the trial court did not have jurisdiction under the North Carolina Declaratory Judgment Act to hear Bueltel's action because no actual controversy existed between the parties at the time his action was filed.

"Although the North Carolina Declaratory Judgment Act does not state specifically that an actual controversy between the parties is a jurisdictional prerequisite to an action thereunder, our case law does impose such a requirement." *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986). "[T]he existence of an actual controversy is necessary to the court's subject matter jurisdiction." *Id.* at 585, 347 S.E.2d at 30. For there to be an "actual controversy," there must be more than a mere disagreement between the parties and litigation must "appear unavoidable." *Id.* at 589, 347 S.E.2d at 32 (*quoting Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984)).

Our review indicates that future or anticipated action of a litigant does not give subject matter jurisdiction to our courts under the Declaratory Judgment Act. Like the present case, non-competition provisions were at issue in *Sharpe*, where plaintiffs sought a declaration that such provisions were an unfair restraint on trade. However, our Supreme Court held that because there was no evidence of a practical certainty that the plaintiffs would compete with the defendant or that they had the intention of doing so if the provisions in the note were declared invalid, no justiciable controversy existed between the parties at the time the action was filed. *Sharpe*, 317 N.C. at 590, 347 S.E.2d at 32.

In *Wendell v. Long*, 107 N.C. App. 80, 418 S.E.2d 825 (1992), plaintiffs were property owners in a residential subdivision and asked the court, under the Declaratory Judgment Act, to declare the restrictive covenants in their neighbors' deeds valid. This action would prohibit the defendants' proposed construction project. This Court held that no actual controversy existed between the parties that would satisfy the jurisdictional requirement, because the plaintiff's complaint did

BUELTEL v. LUMBER MUT. INS. CO.

[134 N.C. App. 626 (1999)]

"not allege that defendants have acted in violation of these covenants, but [rather] that they anticipate some future action to be taken by defendants which would result in a violation." *Id.* at 83, 418 S.E.2d at 826.

Unlike *Wendell* and *Sharpe,* the present case was not instituted because action in violation of the Agreement was anticipated or likely. Lumber Mutual communicated to Bueltel in the months prior to suit that he was actually in the process of violating the Agreement and that legal action may be taken against him. We have examined the pleadings and record in the present case to determine whether there is an actual controversy sufficient to confer jurisdiction under the Declaratory Judgment Act. Plaintiff seeks a judgment as to whether or not his past and present actions violate the contract. Lumber Mutual, in its answer, asks the Court to find the contract valid and grant it injunctive relief by prohibiting the plaintiff from *further* action in violation thereof. The parties were not asking the court to interpret the document in anticipation of future acts, but in light of past and present action. Therefore, an actual controversy exists and we find no error by the trial court on this issue.

[2] Secondly, defendant relies on *Farthing v. Farthing* for its contention that the trial court erred because it did not have the power to declare the Agreement void and unenforceable under the North Carolina Declaratory Judgment Act.

The Declaratory Judgment Act provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

N.C. Gen. Stat. § 1-254 (1996). "The Declaratory Judgment Act . . . is designed to provide an expeditious method of procuring a judicial decree construing wills, contracts, and other written instruments and declaring the rights and liabilities of parties thereunder. It is not a vehicle for the nullification of such instruments." *Farthing v. Farthing,* 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952). In *Farthing,*

the North Carolina Supreme Court ruled that the trial court could construe a duly probated will, but it did not have the power to nullify it. Although not explored in detail in *Farthing*, this holding apparently relied on the rule that an executor named in a will may apply to the clerk of the superior court to have the will admitted to probate, N.C. Gen. Stat. § 31-12 (1984), and "[s]uch record and probate is conclusive in evidence of the validity of the will, until it is vacated on appeal or declared void by a competent tribunal." N.C. Gen. Stat. § 31-19 (1984). While exclusive original jurisdiction in probate matters is vested in the superior court division, the clerk of court

> is given exclusive original jurisdiction in the administration of decedents' estates except in cases where the clerk is disqualified to act. In most instances, therefore, the Superior Court Judge's probate jurisdiction is, in effect, that of an appellate court because his jurisdiction is derivative and not concurrent.

*In re Estate of Longest*, 74 N.C. App. 386, 390, 328 S.E.2d 804, 807, *disc. review denied*, 314 N.C. 330, 333 S.E.2d 488 (1985) (citations omitted). Therefore, the validity of a will is a probate matter and cannot be challenged except by appeal of an order of the clerk of court to the superior court. The validity of a contract, however, is a different matter.

In *Townsend v. Harris*, 102 N.C. App. 131, 401 S.E.2d 132, *disc. review denied*, 328 N.C. 734, 404 S.E.2d 878, *cert. denied*, 502 U.S. 919, 116 L. Ed. 2d 270 (1991), this Court affirmed the trial court's ruling in favor of defendant on her counterclaim that the contingency fee contract at issue was void as being against public policy pursuant to the Declaratory Judgment Act. Thus, it is clear that while the superior court may not nullify a duly probated will except upon appeal, it certainly may determine the validity and enforceability of a contract under the Declaratory Judgment Act. To interpret this Act otherwise would render it useless. We conclude the trial court did not err on this issue.

[3] Next, defendant contends that the restrictive covenant in the Agreement is valid and enforceable under Massachusetts law. Plaintiff contends that the Agreement should be interpreted under North Carolina law and, therefore, it is invalid and unenforceable because contrary to North Carolina law, (1) the "forum" selection clause resulted from unequal bargaining power; (2) there is failure of consideration; and (3) the non-competition restriction is unenforceable.

Plaintiff mistakenly refers to the choice of law provision in the Agreement as a forum selection clause. The Agreement does not mention where suit must be brought, but unambiguously states that it is "a Massachusetts contract and shall be construed and enforced under and be governed in all respects by the laws of the Commonwealth of Massachusetts, without regard to the conflict of laws principles thereof." Plaintiff contends that a contract is governed and interpreted by the law of the state in which it is executed; therefore, the Agreement is governed by North Carolina law. Our Supreme Court has held that "the interpretation of a contract is governed by the law of the place where the contract was made." *Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). However, in the same case, the Court also stated that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Id.* In *Land Co.* these two rules coincided for the contract was executed in Virginia and the contract had a choice of law provision in favor of Virginia.

The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law. *Duke Power v. Blue Ridge Elec. Membership Corp.*, 253 N.C. 596, 117 S.E.2d 812 (1961). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). Based on the foregoing, and following the logic of *Land Co.*, it is apparent that when a choice of law provision is included in a contract, the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it was made. The Agreement here states that the law of Massachusetts is to apply to its construction and enforcement "in all respects." Choice of law provisions are not contrary to the laws of this state. The parties' intent must rule and we therefore hold that Massachusetts law applies to the construction and enforcement of the Agreement in all respects. Plaintiff's arguments that the Agreement is invalid under North Carolina law are therefore without merit.

We are unable to determine from the order of the trial court whether it construed and interpreted the Agreement under North Carolina or Massachusetts law. Therefore, we hold that order of the trial court granting summary judgment for plaintiff is reversed and remanded for proceedings in accordance with this opinion.

Reversed and remanded.

Judges WYNN and WALKER concur.