LUCILLE B. TYNDALL-TAYLOR AND RICHARD C. TYNDALL, IV, BY AND THROUGH HIS GUARDIAN AD LITEM, ELSIE S. TYNDALL, PLAINTIFFS V. MINNIE CAROL TYNDALL IN HER CAPACITY AS ADMINISTRATRIX OF THE ESTATE OF RICHARD CARL TYNDALL, JR. AND MINNIE CAROL TYNDALL, INDIVIDUALLY, DEFENDANTS

No. COA02-246

(Filed 20 May 2003)

**Contracts; Wills— breach of contract to make a will—specific performance of separation agreement**

The trial court erred in a breach of contract to make a will case seeking specific performance of a separation agreement by granting summary judgment under N.C.G.S. § 1A-1, Rule 56 in favor of defendants and the case is remanded to the trial court for entry of summary judgment in favor of plaintiffs, because: (1) the terms of the separation agreement obligated both plaintiff mother and decedent father to separately execute wills that devised their interests in the subject real estate to their son, and decedent breached a contract to make a will by simply failing to execute a will; and (2) plaintiff mother is not precluded from seeking enforcement of the pertinent separation agreement in equity when by the combination of deeds and will she in effect carried out the intent of the agreement.

Appeal by plaintiffs from judgment entered 18 September 2001 by Judge Benjamin G. Alford in Jones County Superior Court. Heard in the Court of Appeals by a reconstituted panel per order 21 January 2003.

*Sumrell, Sugg, Carmichael, Hicks & Hart, P.A., by Arey W. Grady, III, for plaintiff-appellants.*

*Stubbs & Perdue, P.A., by John W. King, Jr., for defendant-appellees.*

HUDSON, Judge.

Plaintiffs filed suit in superior court alleging breach of a contract to make a will. The court granted defendants' motion for summary judgment and dismissed the case. Plaintiffs appealed, and for the reasons discussed here, we reverse.

The parties submitted stipulations to the pertinent facts, which include those summarized below. Richard Carl Tyndall, Jr. ("dece-

dent") and Lucille Tyndall-Taylor ("Tyndall-Taylor") were married on 22 November 1953. One child was born of the marriage, Richard C. Tyndall, III ("Richard III"). Decedent and Tyndall-Taylor jointly owned a 280 acre farm when they separated in early 1979. On 15 May 1979, they entered into a separation agreement entitled a "Deed of Separation and Property Settlement" ("the Agreement"). As part of the Agreement, they agreed to divide the farm equally. Additionally, Paragraph 17 of the Agreement provided that "[t]he party of the first part and the party of the second part hereby covenant, contract and agree to execute a Last Will and Testament wherein each shall divise [sic] their interest in the 280 acre farm now owned by the parties to their son, Richard C. Tyndall, III." At the time the Agreement was signed, Richard III was an unmarried adult with no children.

On 27 June 1980, decedent and Tyndall-Taylor were divorced. On 30 December 1987 Richard III married Elsie S. Tyndall, and in May 1998, Elsie Tyndall gave birth to a son, Richard C. Tyndall, IV ("Richard IV"). On 29 March 1998, Richard III died, survived by his wife Elsie, his son Richard IV, his mother Tyndall-Taylor, and the decedent.

Decedent died in June 2000. At the time of decedent's death, Tyndall-Taylor had already conveyed away most of her interest in the farm in the following manner: approximately 131 acres to her son Richard III, subject to minor exceptions; and a 1.47 acre homesite to her son Richard III and his wife. She also executed a will in 1984 providing that all of her property should pass to her son, Richard III, or in the event of his death, to Richard IV. Decedent died intestate, and therefore, his interest in the farm passed in part to his second wife, defendant Minnie Carol Tyndall, and in part to plaintiff Richard IV, his only surviving lineal issue.

Plaintiffs brought this breach of contract action seeking an order directing that all of decedent's interest in the farm be conveyed to plaintiff Richard IV.

On 27 August 2001, Judge Benjamin G. Alford heard arguments from both parties on their respective motions. By order 13 September 2001, Judge Alford granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. Plaintiff now appeals.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001).

> An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.

*Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 358, 558 S.E.2d 504, 506, *disc. review denied*, 356 N.C. 159, 568 S.E.2d 186 (2002) (internal citations and quotations omitted).

Plaintiffs and defendants, in their motions for summary judgment and in plaintiffs' assignment of error, agreed that there are no genuine issues of material fact, and entered into a stipulation of facts upon which the trial court made its ruling. Thus, we must determine only whether either party was entitled to judgment as a matter of law.

In general, a court interprets a contract according to the intent of the parties to the contract. *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999), *disc. review denied*, 351 N.C. 186, 541 S.E.2d 709 (1999). In addition, "[i]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Id.*

This Court has previously noted that:

> Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties.

*Strader v. Sunstates Corp.*, 129 N.C. App. 562, 569, 500 S.E.2d 752, 756 (1998), *disc. review denied*, 349 N.C. 240, 514 S.E.2d 274 (1998). A contract necessarily "encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion." *Id.* at 569, 500 S.E.2d at 755-56.

However, "[w]hen a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law." *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 227, 333 S.E.2d 299, 304 (1985) (citations omitted). A separation agreement is construed using the rules of contract interpretation. Thus, "[w]here the terms of a separation agreement are plain and explicit, the court will determine the legal effect and enforce it as written by the parties." *Blount v. Blount*, 72 N.C. App. 193, 195, 323 S.E.2d 738, 740 (1984), *disc. review denied*, 313 N.C. 506, 329 S.E.2d 389-90 (1985). Moreover, "[i]t is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987). "Whether or not the language of a contract is ambiguous or unambiguous is a question for the court to determine." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52, *affirmed*, 317 N.C. 330, 344 S.E.2d 788 (1986). In making this determination, "words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible . . . ." *Id.* Therefore, whether the parties to the agreement here implicitly intended Richard IV as a beneficiary of Paragraph 17 of the Agreement is a question of law susceptible to summary disposition. Based on the plain and unambiguous language of Paragraph 17, we hold that as a matter of law the parties had no such intention when they entered into the Agreement.

However, our Supreme Court has previously held on similar facts that unnamed parties in a contract to make a will may seek specific enforcement of that contract. In *Rape v. Lyerly*, 287 N.C. 601, 215 S.E.2d 737 (1975), plaintiffs instituted an action seeking specific performance of an alleged contract to devise real property. In their complaint, plaintiffs alleged that: in March of 1959, James Lyerly entered into an agreement with his daughter, Mildred, and his son, Woodrow, under which Mildred and Woodrow obligated themselves to care for James and his wife Pearl during their lifetime. In return, James agreed

to leave all of his real estate to Mildred upon condition that she pay certain sums of money to other specified individuals. On 21 March 1959, James signed a writing embodying the agreement. Mildred died in 1965 and thereafter her husband, Basil, and her three children carried out her obligation to care for James and Pearl. Pearl died in 1966 and James died in 1970. James left a will devising substantial parts of his real estate to defendants, contrary to his agreement with Mildred. Plaintiffs, Mildred's children, brought suit for specific performance of the 1959 agreement between Mildred and James to convey certain parcels of real estate.

In holding that plaintiffs were entitled to specific performance of the 1959 agreement, the Court noted that "a valid written contract to devise land is enforceable in equity." *Id.* at 614, 215 S.E.2d at 745. The Court pointed out that:

> [A] decree for specific performance is nothing more or less than a means of compelling a party to do precisely what he ought to have done without being coerced by a court.
>
> * * *
>
> The foregoing impels the conclusion that the rights of plaintiffs are determinable as if [James] had died leaving a valid, probated will, in which he devised his real property in the manner set forth in . . . the 1959 contract-will. Had he done so, plaintiffs would take as *the issue* of Mildred by virtue of G.S. 31-42(a)[1], [North Carolina's anti-lapse statute].

*Id.* at 622, 215 S.E.2d at 750-51.

Here, the terms of the Agreement obligated both Tyndall-Taylor and decedent to separately execute wills that devised their interests in the subject real estate to their son, Richard III. Had decedent done so, when Richard III predeceased the decedent, Richard IV would have taken the property "as the issue" of Richard III "by virtue of G.S. 31-42." *Id.*

We are cognizant of the fact that in the present case the decedent died intestate, whereas in *Rape* the decedent died leaving a valid will. We are persuaded, however, that the reasoning behind the decision

---

1. Although the text of G.S. § 31-42 was amended by the General Assembly in 1999 to be less restrictive, *see* 1999 Sess. L. 145, s. 1, the general effect of that section as cited in *Rape* is consistent with the version of G.S. § 31-42 that was in effect at the time the present action was instituted.

applies here. We see no meaningful distinction between the circumstances in *Rape,* where decedent breached a contract to make a will by revoking the will and executing a subsequent will that was probated, and the situation here where decedent breached a contract to make a will by simply failing to execute a will.

We find additional support for this conclusion in our Supreme Court's decision in *Chambers v. Byers,* 214 N.C. 373, 199 S.E. 398 (1938), where the decedent contracted to devise all of his property to his adopted daughter. In *Chambers,* the decedent died intestate, thereby breaching his contractual obligation to devise his property to his adopted daughter. The Court, in holding that the daughter was entitled to retain possession of the property, noted that:

> There can be no question that a contract upon a sufficient consideration to devise lands is valid and may be enforced in a court of equity, the decree being so drawn as to declare the parties to whom the land is devised, *or, in the event of a failure to devise, the heirs at law to hold such lands in trust for the persons to whom the testator had contracted to devise them.* It is settled by a line of authorities which are practically uniform, that while a court of chancery is without power to compel the execution of a will, and therefore the specific execution of an agreement to make a will can not be enforced, yet if the contract is sufficiently proved and appears to have been binding on the decedent, and the usual conditions relating to specific performance have been complied with, then equity will specifically enforce it by seizing the property which is the subject matter of the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by his will (emphasis added).

*Id.* at 377-78, 199 S.E. at 401 (internal citations and quotation marks omitted). Further, the Court noted that "to give effect to such a contract is not making a will for a deceased party; it is merely making 'effectual what the parties have themselves agreed upon.' " *Id.* at 678, 199 S.E. at 402.

Defendant further contends that plaintiff Tyndall-Taylor by her own breach of the Agreement, excused decedent from performance under the Agreement. Defendants argue that because Tyndall-Taylor retained a small portion of the farm (which she currently owns), conveyed most of the farm to Richard III, conveyed a small portion of the farm to Richard III and his wife as tenants by the entireties and that

**TYNDALL-TAYLOR v. TYNDALL**

[157 N.C. App. 689 (2003)]

because these dispositions were by deed rather than by will, Tyndall-Taylor breached her obligations under the Agreement and therefore may not seek to enforce its terms in equity. We disagree.

For the breach of a covenant of a separation agreement by one spouse to relieve the other from liability "the respective covenants must be interdependent rather than independent [and] *the breach must be of a substantial nature,* must not be caused by the fault of the complaining party, *and must have been committed in bad faith.*" (emphasis added). *Smith v. Smith,* 225 N.C. 189, 198, 34 S.E.2d 148, 153 (1945).

Here, plaintiff Tyndall-Taylor by deed conveyed the majority of her share of the farm to her son, Richard III. She also conveyed a smaller portion of the farm to Richard III and his wife as tenants by the entireties, and still retains a small portion of the farm for herself as a homesite. In addition, she executed a will in which she left "all of my property, both real and personal, to my son [Richard III] . . . in fee simple forever." Thus, by the combination of deeds and will, she in effect carried out the intent of the Agreement. Paragraph 17 of the Agreement required each party to execute a will which would devise each party's interest in the farm to Richard III. Under the circumstances described above, we do not believe that Tyndall-Taylor's actions in conveying her portion of the farm, whether or not substantial in nature, bear any indication of bad faith on her part. Thus, we do not believe she is precluded from seeking enforcement of this provision of the Agreement in equity.

There being no genuine issue of material fact, we conclude that plaintiffs are entitled to judgment as a matter of law. Accordingly, summary judgment in favor of defendants is reversed and this case is remanded to the trial court for entry of summary judgment in favor of plaintiffs.

Reversed and remanded.

Judges McGEE and STEELMAN concur.