CONNIE GINN BROWN, RALPH LEROY GINN, INDIVIDUALLY AND AS JOINT EXECUTRIX/EXECUTOR OF THE ESTATE OF HENRY LEE GINN, AND THE ESTATE OF HENRY LEE GINN, PLAINTIFFS v. LOUISE DIXON GINN, DEFENDANT

No. COA06-511

(Filed 6 February 2007)

**Husband and Wife— antenuptial agreement—payments for ending tobacco allotments**

Defendant disclaimed her rights to decedent's separate property as well as the income and proceeds from that property by the plain language of an antenuptial agreement, and the trial court correctly granted summary judgment for plaintiffs in an action seeking assignment to them of payments from the federal government for ending tobacco allotments.

Appeal by defendant from judgment entered 3 January 2006 by Judge Paul L. Jones in Greene County Superior Court. Heard in the Court of Appeals 15 November 2006.

*Mills & Economos, L.L.P., by Larry C. Economos, for plaintiff-appellees.*

*White & Allen, P.A., by Richard J. Archie, for defendant-appellant.*

HUNTER, Judge.

Louise Dixon Ginn ("defendant") appeals from judgment granting summary judgment to Connie Ginn Brown, Ralph Leroy Ginn and the Estate of Henry Lee Ginn ("plaintiffs"). Defendant contends the trial court misapplied the law in granting summary judgment to plaintiffs. After careful review, we affirm the judgment of the trial court.

On 12 July 2005, plaintiffs filed a complaint against defendant in Greene County Superior Court asserting several claims for relief, including breach of contract and specific performance. Both parties moved for summary judgment, which matter came before the trial court on 28 November 2005. The evidence presented to the trial court tended to show that plaintiffs are the children of Henry Lee Ginn ("Ginn") and Nannie Ruby Ham Ginn, who died 10 January 1990. Following his wife's death, Ginn married defendant. Before defendant and Ginn married, however, they signed an antenuptial agreement ("the agreement") on 16 August 1990. In the agreement, defendant

agreed to "waive[] and release[] all statutory rights that she has, or may have, in the property or estate of Ginn[.]" Ginn and defendant also agreed that "each party shall separately retain all rights in his or her own property, (and any proceeds or interest therefrom and any increase in value thereof) whether now owned or hereafter acquired . . . ."

Ginn was a tobacco farmer who owned his tobacco farm, tobacco barn, and residence before marrying defendant. As a tobacco farmer, Ginn received tobacco crop allotments from the federal government. Ginn died on 7 January 2005. In his last will and testament, Ginn devised the ten-acre residential portion of his farm to defendant, but stated he did "not intend for any crop allotments of any kind to go with the approximately 10 Acres which are being devised to my said wife and I do specifically withhold any such crop allotments from said devise." Plaintiffs were devised equal portions of the remaining 178 acres of the tobacco farm.

On 22 October 2004, the Fair and Equitable Tobacco Reform Act of 2004 ("FETRA") was signed into law. 7 USCA § 518 et. seq. (2005). With the FETRA, the federal government ended the program under which Ginn received his tobacco allotments. *Tobacco Transition Payment Program*, 70 Fed. Reg. 17150 (2005) (codified at 7 C.F.R. §§ 723, 1463-64). In consideration for ending the program, the FETRA allowed Tobacco Transition Payment Program payments ("TTPP payments") to be awarded to qualified farmers. 7 USCA § 518a(a) (2005). The Farm Service Agency ("FSA"), a division of the United States Department of Agriculture ("USDA"), was charged with management of the distribution of these TTPP payments. 7 CFR 1463.101(a) (2005). The FSA did not accept applications for TTPP payments until 14 March 2005, approximately three months after Ginn's death. 70 Fed. Reg. at 17156 (2005).

Both defendant and plaintiffs made applications to the FSA for these payments shortly before the 17 June 2005 deadline. The FSA determined that Ginn's farm qualified for TTPP payments and valued them at $65,569.00. The FSA awarded defendant, not plaintiffs, the TTPP payments. The decision was based on Section 518a(f) of the FETRA, which states:

> If a tobacco quota holder who is entitled to contract payments under this section dies and is survived by a spouse or one or more dependents, the right to receive the payments shall transfer to the

surviving spouse or, if there is no surviving spouse, to the estate of the tobacco quota holder.

7 USCS § 518a(f) (2005). Part 1463.111(a) of the USDA's final rule was also pertinent:

TTPP payments made to any person under this subpart shall be made without regard to questions of title under State law and without regard to any claim or lien against the tobacco quota, tobacco marketing allotment, or the farm for which a tobacco quota had been established . . . by any creditor or any other person.

70 Fed. Reg. at 17165 (codified at 7 C.F.R. § 1463.111(a)).

Plaintiffs then filed the current action in North Carolina state court. In their complaint, plaintiffs did not challenge the FSA's decision to award defendant the TTPP payments. Instead, plaintiffs alleged that defendant must assign them the TTPP payments pursuant to the terms of the antenuptial agreement.

Upon reviewing the evidence, the trial court agreed that plaintiffs were entitled to summary judgment and entered judgment requiring a constructive trust for the benefit of plaintiffs to be placed upon some of the TTPP payments, and requiring defendant to assign the remaining TTPP payments to plaintiffs. Defendant appeals.

Defendant appeals from the granting of summary judgment. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). The Court reviews the matter *de novo* to determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004). As there is no dispute as to any of the material facts before the Court, the issues raised in this appeal are matters of law.

Defendant's primary argument is that the federal law and accompanying regulations preempts state intestate law and enforcement of the agreement. In particular, defendant argues that section 518a(f) of the FETRA, which requires TTPP payments to go to the surviving spouse, preempts state law. Since this section controls, defendant

contends, once she receives the TTPP payments as the surviving spouse, such payments should be free of any further claim by plaintiffs. We do not agree.

Defendant's preemption argument is misguided here. The pertinent issue is not whether the FSA correctly distributed the TTPP payments to defendant, but whether defendant is bound by the terms of the antenuptial agreement to assign the payments to plaintiffs. The FSA awarded defendant the TTPP payments "without regard to questions of title under State law and without regard to any claim or lien against the tobacco quota, tobacco marketing allotment, or the farm for which a tobacco quota had been established . . . by any creditor or any other person." 70 Fed. Reg. at 17165 (codified at 7 C.F.R. § 1463.111(a)). It is now a question for our state courts to determine whether plaintiffs have a legitimate claim on the payments made to defendant. Nothing in the FSA limits plaintiffs' ability to seek appropriate redress under state law; rather, the FSA

> provisions are in place for administrative ease. The government will pay the eligible quota holder or [transferee] "without regard to questions of title under State law and without regard to any claim or lien against the tobacco quota" so that it does not have to bother with conflicting claims over payment. . . . By setting up a method of payment, the Secretary of Agriculture is not abrogating the rights of [plaintiffs] under state law.

*In re Evans*, 337 B.R. 551, 561 (Bankr. E.D.N.C. 2005) (holding that a preemption argument was not persuasive, in that nothing in the FSA prevented creditors from filing claims against TTPP recipients under state law once TTPP payments were made to eligible debtors).

In the complaint, rather than dispute the FSA's decision, plaintiffs alleged that defendant breached the agreement when she refused to assign the payments to them. This allegation raises a question of state law, not a question requiring interpretation of federal law, and thus the FETRA and the federal law of preemption have no bearing here. We therefore consider whether defendant is obligated under the terms of the antenuptial agreement to turn over to plaintiffs the TTPP payments she received.

Defendant acknowledges that the antenuptial agreement is legitimate and binding, but contends she did not waive her rights to the TTPP payments under the terms of the agreement. " 'The principles of construction applicable to contracts also apply to premarital agree-

ments[.]' " *Roberts v. Roberts*, 173 N.C. App. 354, 357, 618 S.E.2d 761, 764 (2005) (citations omitted). Contracts are interpreted according to the intent of the parties. *Tyndall-Taylor v. Tyndall*, 157 N.C. App. 689, 691, 580 S.E.2d 58, 60 (2003). The intent of the parties is determined by examining the plain language of the contract. *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999). Extrinsic evidence may be consulted when the plain language of the contract is ambiguous. *Tyndall-Taylor*, 157 N.C. App. at 691-92, 580 S.E.2d at 61. Our courts have held that parties to premarital agreements may freely relinquish all rights to each others' property. *See, e.g.*, *Prevatte v. Prevatte*, 104 N.C. App. 777, 411 S.E.2d 386 (1991) (upholding waiver of rights to equitable distribution in absolute release of property rights).

The agreement signed by defendant in the instant case does not explicitly reference TTPP payments, but its plain language and broad scope illustrate the intent of the parties as to the payments. Article I of the agreement states that "each party shall separately retain all rights in his or her own property, (**and any proceeds or interest therefrom and any increase in value thereof**) whether now owned or hereafter acquired[.]" (Emphasis added.) The tobacco farm was the separate property of Ginn before the marriage. By the plain language of the provision, defendant disclaimed her rights to Ginn's separate property, as well as income and proceeds from that property. Both his tobacco allotments and the TTPP payments are derived from the farm, Ginn's separate property. Thus, defendant disclaimed all rights to the TTPP payments under the plain language of article I of the agreement.

Numerous other provisions in the agreement further indicate defendant's waiver of rights to the TTPP payments. For example, in article III, defendant "waive[d] and release[d] all statutory rights that she has, or may have, in the property or estate of Ginn[.]" FETRA section 518a(f), a federal statute, provides her the right to the TTPP payments. By waiving her statutory rights to Ginn's property, defendant waived the right to the TTPP payments. Article VIII of the agreement states that "all property whether real, personal, or mixed, tangible or intangible which is solely in the name of either party at the time of the marriage shall be considered as belonging solely to the party whose name is on the property and the other party . . . shall have no rights in said property." Moreover, article X of the agreement "bind[s] and inure[s] to the benefit of the parties and their respective legal representatives, heirs, successors, and assigns." As plaintiffs are Ginn's

heirs, legal representatives of his estate, and successors in ownership of the farm, the TTPP payments rightfully belong to them under the plain language of this last provision. The plain language of these provisions sufficiently demonstrates defendant's intent to waive her rights to the TTPP payments. We therefore conclude the trial court correctly interpreted the terms of the antenuptial agreement and properly granted summary judgment in favor of plaintiffs. The judgment of the trial court is affirmed.

Affirmed.

Judges McCULLOUGH and ELMORE concur.