KRG New Hill Place, LLC v. Springs Investors, LLC, 2015 NCBC 69.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 14770

KRG NEW HILL PLACE, LLC and KITE
REALTY NEW HILL PLACE, LLC,
               Plaintiffs

               v.

SPRINGS INVESTORS, LLC; B. KYLE
WARD; MICHAEL L. HUNTER and
STEPHEN C. WARD,
               Defendants

)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") and Defendants' Motion for Partial Summary Judgment ("Defendants' Motion") (collectively, "Motions"). On May 28, 2015, the Court held a hearing on the Motions.

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, the record evidence filed by the parties, the arguments of counsel, and other appropriate matters of record, FINDS and CONCLUDES as stated herein.

> *Smith Moore Leatherwood LLP by Bradley M. Risinger, Esq. and Barnes & Thornburg LLP by Robert D. MacGill, Esq., Karoline E. Jackson, Esq., and Alexander P. Orlowski, Esq. for Plaintiffs.*

> *Shanahan Law Group, PLLC by Kiernan J. Shanahan, Esq., John E. Branch III, Esq., Brandon S. Neuman, Esq., Christopher Battles, Esq., and Jeffrey M. Kelly, Esq. for Defendants.*

McGuire, Judge.

1.      On November 5, 2013, Plaintiffs initiated this case by filing their Complaint. On March 6, 2015, Plaintiffs filed their Amended Complaint with leave of Court.

2.      The Amended Complaint states claims for breach of contract, breach of implied covenant of good faith and fair dealing, declaratory judgment, fraudulent transfer, unfair and deceptive trade practices, and liability of the individual Defendants under G.S. §§ 57C-3-30 and 57C-3-32.

3.      On April 30, 2015, Defendants filed their Answer to Amended Complaint and Counterclaims. Defendants allege counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment.

4.      On February 20, 2015, Defendants filed their Motion for Partial Summary Judgment. Defendants' Motion seeks summary judgment in their favor as to: (1) Defendants' counterclaim for breach of contract; (2) Plaintiffs' request for specific performance on their claim for breach of contract; and (3) Plaintiffs' claims for fraudulent transfer and unfair and deceptive trade practices.

5.      On February 20, 2015, Plaintiffs filed their Motion for Partial Summary Judgment. Plaintiffs' Motion seeks summary judgment in their favor as to: (1) Defendants' counterclaim for tortious interference with prospective economic advantage;[2] and (2) Defendants' counterclaims for breach of contract, breach of good faith, and declaratory judgment stemming from (a) Defendants' allegations that Plaintiffs were obligated to

---

[1] The full procedural history of this matter has been included in prior orders of this Court, and for brevity will not be restated here.

[2] In their amended counterclaims, Defendants also re-alleged a claim for tortious interference with prospective economic advantage that the Court had already dismissed with prejudice in its February 27, 2015 Opinion and Order. Defendants' counsel conceded at the May 28, 2015 hearing that they have no viable claim for tortious interference, and the Court will not address that claim again in this Order.

complete construction under the contract by December 31, 2010, and (b) Defendants' allegation that Springs Investors, LLC is entitled to credits against any amounts it may owe for "Confirmed Cost Savings."

6.     On May 28, 2015, the Court held a hearing on the Motions.  The Motions have been fully briefed and argued and are ripe for determination.

FACTUAL BACKGROUND

7.     On July 15, 2008, Plaintiffs KRG New Hill Place, LLC and Kite Realty New Hill Place, LLC (Plaintiffs are hereinafter referred to in the singular as "KRG") and Defendant Springs Investors, LLC ("Springs"),[3] entered into a written Post-Closing Development Agreement to coordinate the development of their adjacent properties located in Holly Springs, North Carolina.  In the Development Agreement, KRG and Springs agreed to share the cost of making certain improvements to existing roadways and the construction of an internal thoroughfare to enable the public to access both properties ("Infrastructure Work").[4]  The parties intended to develop a shopping center and residential apartments on the properties.

8.     Section 2 of the Development Agreement provided as follows:

KRG shall cause the Infrastructure Work to be constructed and installed in accordance with the Approved Plans by a general contractor selected in accordance with Section 2.  Following approval of the Approved Plans, KRG shall bid each of the major trades involved in the Infrastructure Work to not less than three qualified contractors.  KRG and Springs Investors shall jointly review all such bids and KRG shall promptly notify Springs Investors of KRG's decision to award contracts to the respective bidders.  KRG shall endeavor to cause each contract entered into for the performance of the Infrastructure Work to require substantial completion of the work thereunder to be completed such that the entire Infrastructure Work shall be completed by December 31, 2010.  All construction performed by or on behalf of any party under this Agreement shall be performed in accordance with all applicable laws,

---

[3] Defendants B. Kyle Ward, Michael L. Hunter, and Stephen C. Ward are the principals in Springs Investors, LLC, and are collectively referred to in this Opinion and Order as the "Individual Defendants."

[4] Am. Compl. Ex. 1 ("Development Agreement").

ordinances, and regulations of the Town or other applicable governmental entity, and shall be performed in as expeditious manner as reasonably possible.[5]

9. Shortly after the Development Agreement was executed, KRG put the Infrastructure Work on hold due to the downturn in the economy. The Infrastructure Work has never been completed. Nevertheless, the parties continued to communicate with one another and work together towards potential completion of the Infrastructure Work until this lawsuit was filed in November 2013.

10. The parties disagree whether the Section 2 of the Development Agreement required KRG to complete the Infrastructure Work by December 31, 2010. KRG contends that the words "shall endeavor" in Section 2 of the Agreement meant that the December 31, 2010 date was a goal, rather than a deadline. Springs contends that the provision required the completion of all Infrastructure Work by December 31, 2010.[6] In addition, KRG contends, and Springs disputes, that even if December 31, 2010, was the deadline for completion of the work, Springs waived the deadline by its conduct following December 31, 2010, including continuing to collaborate with KRG.[7] Springs contends that the provision in the Development Agreement stating that it could only be modified or amended by written agreement, and the

---

[5] *Id.* at § 2.

[6] *Compare* Pls.' Mem. Supp. Mot. Summ. J. 11 ("The plain language of the Agreement states that [KRG] had no obligation to complete the Infrastructure Work by December 31, 2010.") *with* Defs.' Mem. Supp. Mot. Summ. J. 2-3 ("The parties, at the time they executed the [Development Agreement], intended December 31, 2010 to serve as a deadline for the completion of the Infrastructure Work . . . ."; "There is no material dispute of fact that [KRG] failed to complete the Infrastructure Work by December 31, 2010, which constitutes a material breach" of the Development Agreement.); Am. Compl. Ex. 3 at 2 (March 11, 2013 letter from KRG to Springs regarding the December 31, 2010 date, stating that "[w]hile that time frame may have been contemplated by both parties in July of 2008 when the Agreement was executed, the parties did not and could not have foreseen the devastating economic downturn that befell the U.S. shortly after the Agreement was executed").

[7] *See, e.g.*, Pls.' Mem. Supp. Mot. Summ. J. Ex. 28 (notes from Jan. 4, 2011 meeting).

fact no such written amendment ever occurred, means that the purported deadline was never changed.[8]

11.     The Development Agreement required KRG to "prepare and submit to [Springs] a set of plans and specifications for the Infrastructure Work."[9] Springs had ten business days after receipt of the plans in which to notify KRG of any problems with the plans. A dispute of fact exists as to whether KRG complied with this requirement and provided project plans to Springs.[10]

12.     The Development Agreement also provided that the cost of the Infrastructure Work would be shared between KRG and Springs.  KRG was to contribute a fixed sum of $6,156,394.00 to the Infrastructure Work (the "Contribution Amount"). The parties dispute whether KRG has expended the Contribution Amount towards work properly attributed the Infrastructure Work.  Springs was to be "solely responsible for the Cost of the Infrastructure Work in excess of the Contribution Amount," and was required to deposit $2,915,409.00 into an escrow account to be applied to any funds needed in excess of the Contribution Amount.[11] Springs established the escrow account, but the parties dispute whether Springs is required to contribute additional amounts to the costs of the Infrastructure Work.[12]

13.     The Development Agreement also provides that Springs would receive credits against any funds it was required to contribute to the Infrastructure Work for "Confirmed

---

[8] Development Agreement at § 6.
[9] *Id.* § 1.
[10] *Compare* Defs.' Mot. Summ. J. Ex. D (stating that Defendants "never received any such Plans prior to going to Bid and, therefore, did not have an opportunity to review any of the Plans pursuant to the Agreement") *with* Am. Compl. ¶ 28 ("Pursuant to Section 1 of the Agreement, on or around April 25, 2012, Kite provided Springs Investors with the Infrastructure Work Plans."); Pls.' Br. Opp. Defs.' Mot. Summ. J. Exs. 25-26 (emails discussing attached project plans).
[11] Development Agreement at §§ 2-3.
[12] *Compare* Defs.' Br. Supp. Mot. Summ. J. at 10 ("There is no evidence in the record showing that [Plaintiffs have] spent approximately $6.1 million on the Infrastructure Work called for in the PCDA") *with* Pls.' Opp. Defs.' Mot. Summ. J. 6 ("The latest budget projects that [Defendants] will be responsible for over $3,000,000 in expenses above [their] escrowed amount.").

Cost Savings" that Springs was able to achieve on the project.[13]   There is a dispute of fact as to whether Springs achieved such Confirmed Costs Savings.

14.     KRG contends that it has spent its full Contribution Amount of $6,156,394.00 and that the Development Agreement requires Springs to contribute additional amounts towards the cost of the Infrastructure Work.  Springs alleges that KRG "has not exceeded its contribution amount because [KRG] continues to include costs outside the scope of the [Development Agreement] and exclude credits to which Springs is entitled."[14]   In December 2012, KRG sent Springs additional bids from contractors for completion of the Infrastructure Work.  KRG alleges that the bids would have put Springs on notice that it would need to contribute an additional $2 million towards the Infrastructure Work.[15]   In February 2013, KRG sent notice to Springs that Springs was obligated to contribute additional amounts to escrow. In May 2013, Springs notified KRG that it would not make any further contributions towards the cost of the Infrastructure Work. [16]

15.     On or around February 28, 2013, shortly after KRG sent notice to Springs that additional escrow payments were required, Springs transferred certain real property to the Individual Defendants for little or no consideration.[17]   Springs also transferred other assets to sister entities owned by the Individual Defendants.  KRG contends that these transfers left Springs with insufficient equity to cover its existing liabilities, and were made for the purpose of putting those assets outside the reach of KRG.[18]  Springs disputes this claim, and contends that the transfers of property and assets were made for legitimate reasons

---

[13] Development Agreement at § 3.
[14] Defs.' Reply Supp. Partial Summ. J. 2, n.3.
[15] Pls.' Opp. Defs.' Mot. Partial Summ. J. 3.
[16] *Id.* at 3-5.
[17] *Id.* at 19.
[18] *Id.* Exs. 9 & 11.

unrelated to the notice from KRG. Springs also alleges that the transfers did not leave Springs unable to fulfill its obligations under the Development Agreement.

## ANALYSIS

16. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting Rule 56(c)). Any inference of fact should be drawn against the movant. *Forbis v. Neal*, 361 N.C. 519, 523-524 (2007) (citing *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)). A genuine issue of material fact will require the court to preserve the issue for a finder of fact. *Bumpers v. Cmty. Bank of N. Va*, 367 N.C. 81 (2013). Although the court must view the record "in the light most favorable to the party opposing the motion," Rule 56(e) provides that summary judgment may not be defeated by "mere allegations or denials," but rather that the opposition must be supported by "specific facts showing that there is a genuine issue for trial." *Patterson v. Reid*, 10 N.C. App. 22, 28 (1970).

### Breach of Contract

17. KRG and Springs each claim that the other breached the Development Agreement. A successful claim for breach of contract shows (1) a valid contract, and (2) breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26 (2000).

*The December 31, 2010 Completion Deadline*

18. The primary dispute underlying the claims in this case centers on whether the Development Agreement obligated KRG to complete the Infrastructure Work by December 31, 2010. Both parties argue that Section 2 of the Development Agreement is unambiguous and requires judgment in their favor as matter of law. Springs alleges that KRG breached

the Development Agreement by not entering into contracts requiring "substantial completion" of the work by December 31, 2010, and by not completing construction before December 31, 2010. KRG argues that the language of Section 2 unambiguously provides that KRG only had to "endeavor" to complete the Infrastructure Work by December 31, 2010, and that it complied with this requirement by continuing the Infrastructure Work notwithstanding Springs' refusal to provide its share of the funds.

19.     It is well-settled that "[w]here the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court . . . must construe the contract as written, in light of the undisputed evidence as to the custom, usage, and meaning of its terms." *Happ v. Creep Pointe Homeowner's Assoc.*, 215 N.C. App. 96, 103 (2011) (alterations in original) (quoting *Hodgin v. Brighton*, 196 N.C. App. 126, 128-29 (2009)). Moreover:

> Contracts are interpreted according to the intent of the parties. The intent of the parties is determined by examining the plain language of the contract. Extrinsic evidence may be consulted when the plain language of the contract is ambiguous.

*Brown v. Ginn,* 181 N.C. App. 563, 567 (2007) (citations omitted). "Ambiguities in contracts are to be resolved . . . upon consideration of 'the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.'" *Cleland v. Children's Home, Inc.*, 64 N.C. App. 153, 157 (1983) (quoting *Silver v. Bd. of Trans.*, 47 N.C. App. 261, 268 (1980)).

20.     The Court concludes that the language of Section 2 of the Development Agreement is ambiguous, and that its meaning must be determined by a jury. The terms "shall endeavor" and "shall be completed" as used in Section 2 appear to be inconsistent with one another, the former suggesting that the deadline is aspirational and the latter that the deadline is a firm requirement. The language of the last sentence of Section 2 suggests that

while the parties wished to meet a December 31, 2010 deadline, the construction work under the agreement needed only to "be performed in as expeditious a manner as reasonably possible." In addition, the evidence regarding the intent of parties with regard to Section 2 is disputed, with both parties presenting evidence supporting their respective interpretations.[19] *See Root v. Allstate Ins. Co.*, 272 N.C. 580, 590 (1968) ("[I]f the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent . . . to show and make certain what was the real agreement between the parties; and in such case what was meant, is for the jury, under proper instructions from the court.").

21. The Court also concludes that issues of material fact exist regarding KRG's argument that Springs waived the December 31, 2010 completion deadline. Accordingly, summary judgment on these grounds is not appropriate.

22. The Court further concludes that Springs' Motion as to its counterclaim that KRG breached the Development Agreement by failing to provide Springs with plans for the Infrastructure Work must fail because the because there exist issues of material fact.[20] Summary judgment is therefore DENIED as to these issues.

*Springs' Obligation to Provide Additional Funds*

23. Springs also moves for summary judgment as to KRG's first claim for breach of contract and for an order requiring Springs' specific performance. KRG alleges that Springs breached the Development Agreement by failing to provide additional funds towards

---

[19] Because the Court is unable to conclude as a matter of law that failure to complete the Infrastructure Work by December 31, 2010 was a breach of the Development Agreement, the Court finds that it cannot properly consider at this time Plaintiffs' argument that Defendants' breach of contract claims are barred by the statute of limitations.

[20] *Compare* Defs.' Mot. Summ. J. Ex. D (stating that Defendants "never received any such Plans prior to going to Bid and, therefore, did not have an opportunity to review any of the Plans pursuant to the Agreement") *with* Am. Compl. ¶ 28 ("Pursuant to Section 1 of the Agreement, on or around April 25, 2012, Kite provided Springs Investors with the Infrastructure Work Plans."); Pls.' Br. Opp. Defs.' Mot. Summ. J. Exs. 25-26 (emails discussing attached project plans).

the Infrastructure Work. Springs argues that the evidence establishes that KRG had not reached its contribution amount so as to trigger any further obligation for Springs to contribute to the Infrastructure Work. Springs further argues that because KRG has breached the Development Agreement, it cannot seek the equitable remedy of specific performance.

24. The Court concludes that there exist disputed facts regarding Springs' obligation to contribute additional funds towards the Infrastructure Work. Similarly, with regard to Springs' counterclaim that it is entitled to a credit for "Confirmed Cost Savings" against any amounts it may owe, the parties dispute the meaning of "Confirmed Cost Savings"[21] as used in the Development Agreement, and the Court concludes that the provision is ambiguous. Accordingly, summary judgment on this issue is also not appropriate. Summary judgment as to the issue of Spring's obligations to contribute additional funds should be DENIED.

*Breach of Good Faith/Declaratory Judgment*

25. KRG seeks summary judgment on Defendants' counterclaim for breach of good faith and Defendants' counterclaim for a declaratory judgment "stemming from [Springs'] contention that the [Development Agreement] . . . obligated [KRG] to complete construction of the Infrastructure Work by December 31, 2010."[22]

26. As discussed above, the record evidence leaves questions of fact as to whether KRG was bound by a December 31, 2010 deadline. Accordingly, summary judgment should be DENIED as to these counterclaims.

---

[21] Development Agreement at § 3.
[22] Pls.' Mot. Partial Summ. J. 1-2.

<u>Fraudulent Transfer</u>

27.     Defendants seek summary judgment on KRG's fourth claim alleging that Springs fraudulently transferred real property and other assets to the Individual Defendants and sister entities controlled by the Individual Defendants in violation of the North Carolina Fraudulent Transfers Act, G.S. § 39-23.1 et seq. ("UFTA"). KRG alleges that Springs transferred the property and assets for less than reasonable value and for the purpose of making Springs insolvent at the time that Springs would have been obligated to provide additional funds for the Infrastructure Work. KRG alleges that Springs did so with the intent of hindering or delaying creditors such as Plaintiffs from collecting amounts due.[23]

28.     A debtor is liable under the UFTA if, *inter alia*, the debtor transferred assets with the intent to hinder, delay or defraud any creditor, or if the transfer was made without receiving "reasonably equivalent value" and the debtor was engaged in or about to engage in business or incur debts for which the debtor's remaining assets would be "unreasonably small" or otherwise insufficient. G.S. § 39-23.4(a).

29.     Defendants argue that they are entitled to summary judgment on this claim because KRG has conceded that Springs has fully satisfied all existing liabilities, and KRG is therefore not a "creditor" of Springs within the meaning of the statute.[24] KRG disputes this argument, and contends that the facts clearly establish that it meets the definition of a "creditor" of Springs under the UFTA.[25]

---

[23] KRG also contends that Springs was dominated and controlled by the Individual Defendants and that the Court should pierce the corporate veil to reach the transferred assets in the hands of the Individual Defendants. Am. Compl. ¶¶ 74-79.
[24] Defs.' Mem. Supp. Mot. Partial Summ. J. 11-14.
[25] Pls.' Opp. Defs.' Mot. Partial Summ. J. 16-21.

30. The Court concludes that significant disputes of material fact exist that preclude summary judgment as to this claim. Accordingly, summary judgment is DENIED as to the claim for relief under the UFTA.

### Unfair and Deceptive Trade Practices

31. Finally, Defendants have moved for summary judgment on KRG's claim for unfair and deceptive trade practices in violation of G.S. §75-1.1 ("UDTPA"). KRG alleges that Springs induced KRG to continue performing under the Development Agreement after December 31, 2010 and then fraudulently transferred assets to the Individual Defendants to avoid Springs' financial obligations under the Agreement.[26] KRG summarizes the basis for its UDTPA claim as follows:

> The Individual Defendants intentionally drained Springs' assets, engaging in a series of voluntary and uncompensated transactions that left the entity insolvent. Second, the Defendants unfairly unfurled a scheme by which it secured [KRG]'s cooperation in construction of the Infrastructure Work, took responsibility for securing a key permit and set target dates for projection completion in 2013, only to later refuse to pay its share of the expenses. Springs lured [KRG's] cooperation, gave no contemporaneous notice that it believed Kite had breached the Agreement, and then systematically drained its assets so that it would be unable to meet its contractual obligations to [KRG].[27]

32. To recover for a violation of G.S. § 75-1.1, KRG "must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001) (citation omitted). "Whether a particular commercial act or practice constitutes an unfair or deceptive trade practice is a question of law." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC 41 ¶ 108 (N.C. Super. Ct. Nov. 3, 2011) (citing *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177 (1998)).

---

[26] Pls.' Opp. Defs.' Mot. Partial Summ. J. 21-24.
[27] *Id.* at 22.

33.     Defendants argue that KRG has not presented evidence that Defendants engaged in conduct that was unfair or deceptive or presented evidence that KRG suffered damages other than damages arising from the alleged breach of the Development Agreement.[28]   The Court already has concluded that issues of fact exist regarding, and Defendants are not entitled to summary judgment on, KRG's claim for fraudulent transfer. The fraudulent transfer claim could support a claim for violation of the UDTPA. *See L.J. Best Furniture Distribs., Inc. v. Capital Delivery Serv., Inc.*, 111 N.C. App. 405, 410 (1993) (finding that an issue of fact existed as to whether asset purchase for inadequate consideration or fraudulent conveyance amounted to an unfair trade practice).  In addition, the Court concludes that there are disputed issues of material fact regarding KRG's claim that Springs induced KRG to continue performing under the Development Agreement. *See Gress v. Rowboat Co., Inc.,* 190 N.C. App. 773, 777 (2008) (finding that allegations that a potential purchaser of businesses induced the businesses to enter into a salary and profit sharing agreement prior to the purchase of the businesses, when the potential purchaser had no intention of consummating its purchase of the businesses, supported a claim under G.S. § 75-1.1).  Accordingly, the Court concludes there summary judgment is inappropriate on these grounds.

34.     Defendants' argument that KRG has failed to present evidence that Defendants' unfair and deceptive conduct proximately caused KRG injury separate from the injury resulting from Springs' alleged breach of the Development Agreement presents a closer call.  KRG does not point to any specific injury or damages caused by Defendants' unfair conduct other than amounts owed due to Springs' alleged breach of the Development Agreement, namely amounts expended on Infrastructure Work by KRG above its

---

[28] Defs.' Mem. Supp. Mot. Partial Summ. J. 14-17.

Contribution Amount. KRG summarizes the injury caused by Defendants' unfair conduct as follows:

> [KRG] has been injured by the Defendants' maneuvering, which was intended to make Springs incapable of meeting its contractual obligations. At least one measure of that injury is the "shortfall" intentionally created by the Defendants: the difference between the funds above [KRG's] Contribution Amount ultimately needed to complete the Infrastructure Work and Springs' remaining assets.[29]

35. Although KRG's alleged injury appears to be coterminous with the damages it seeks from Springs' under its breach of contract claim, the Court concludes that the underlying facts regarding KRG's Chapter 75 claim are in dispute, and the Court cannot conclude as a matter of law that KRG has not presented facts that could support a claim for injury based on the alleged unfair and deceptive acts. First, as noted above, North Carolina has recognized that conduct amounting to a fraudulent transfer designed to avoid the claims of creditors can constitute an unfair and deceptive act. Second, evidence of a breach of contract accompanied by aggravating factors also can support a claim for violation of Chapter 75. *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 370 (2005). In such cases, the underlying monetary injury would be the amount recoverable for the breach of contract. Accordingly, that KRG's primary injury under its claim for unfair and deceptive trade practices are the amounts allegedly owed by Springs under the Development Agreement does not defeat KRG's claim as a matter of law.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

1. Defendants' Motion for Partial Summary Judgment is DENIED in its entirety.

2. Plaintiffs' Motion for Partial Summary Judgment is DENIED in its entirety.

---

[29] Pls.' Opp. Defs.' Mot. Partial Summ. J. 23.

This the 8th day of July, 2015.

        /s/ Gregory P. McGuire
        Gregory P. McGuire
        Special Superior Court Judge
        for Complex Business Cases